**Charles Clifton COLLINS, Plaintiff,**

v.

**Vicki Lynn COLLINS, Defendant.**

**Civ. A. No. C82–2460A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 29, 1984.

Mary Ann B. Oakley, Oakley & Bonner, Atlanta, Ga., D. Lynn Russell, Ann J. Herrera, Decatur, Ga., for plaintiff.

E. Penn Nicholson, David C. Newman, Dodd, Driver, Connell & Hughes, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This action is before the court on plaintiff's motion to substitute counsel, plaintiff's motion for consolidation, and plaintiff's motion for summary judgment. Plaintiff's motion to substitute counsel is not in compliance with Local Rule 71.7 and is therefore DENIED without prejudice. Because the court has concluded, for reasons which will appear below, that this action should be dismissed for failure to state a claim, plaintiff's motion for consolidation and defendant's motion for summary judgment are MOOT.

### I. FACTS.

This action began as a divorce proceeding in the Superior Court of Clayton County with all the bitterness which so often characterizes such proceedings. After a jury returned a verdict against him. but before a final judgment was entered, Mr. Collins filed a motion for reconsideration or in the alternative a motion for a new trial. While that motion was pending Judge Miller, the presiding judge was diagnosed as having terminal cancer. Nevertheless, a hearing was held on Mr. Collins' motions in January 1982. On March 15, 1982, after learning that the judge had decided to rule in Mrs. Collins' favor, Mr. Collins filed a motion to recuse on the grounds that there had been improper attempts to influence the judge through *ex parte* communications and that the judge was incompetent to continue in the case.

The motion to recuse was assigned to Judge Ison. A hearing was held at which Mrs. Collins presented affidavits concerning the ability of Judge Miller to continue hearing the case. Evidence was also presented on the issue of whether Mrs. Collins had improperly attempted to influence Judge Miller. Mr. Collins had subpoenaed various witnesses to testify as to Judge Miller's health, but Judge Ison had granted an unopposed motion to quash the subpoenas.[1] Judge Ison then denied the motion to recuse, finding that Judge Miller was fully competent to continue in the case

---

1. No explanation appears in the record for why Mr. Collins failed to oppose the motion to quash.

and that the *ex parte* communications challenged by Mr. Collins were harmless and did not involve either Mrs. Collins or her attorney.

Immediately following the denial of the motion to recuse, Judge Miller entered his findings of fact, conclusions of law, and final order denying the motion for new trial and motion for reconsideration and awarding custody of the minor child to Mrs. Collins. Judge Miller died soon thereafter.

Subsequent to the entry of these judgments Mr. Collins sought a grant of an application for discretionary review from the Supreme Court of Georgia pursuant to Ga.Code Ann. § 6–701.1(a)(2) in order to review various orders issued by the trial court. Among the orders which Mr. Collins sought to appeal were the final custody order, as amended and re-entered, the order denying defendant's motion for new trial and extraordinary motion for new trial, and the order denying defendant's motion to recuse Judge Miller. On May 19, 1982 the Supreme Court denied the application for discretionary review. Subsequently, the remaining issues of child support, alimony and property division were tried before a jury which rendered a verdict which was reduced to a final judgment on June 16, 1982. Mr. Collins filed a separate application for appellate review of the final judgment and preceding orders, and the court's award of attorney's fees. On September 2, 1982 the Supreme Court denied the second application for appellate review.

Totally dissatisfied with the results obtained in the Georgia courts, Mr. Collins then filed the present action in this court seeking relief under 42 U.S.C. § 1983. Plaintiff's complaint, as amended, asserted that the Georgia discretionary appeal statute, Ga.Code Ann. § 6–701.1(a)(2), violated the equal protection clause of the Constitution. Plaintiff asked this court to declare that statute unconstitutional and enjoin the Supreme Court of Georgia from enforcing it. In essence, he asked this court to order the Supreme Court of Georgia to hear his appeal. Plaintiff's equal protection claim

was dismissed by order dated June 30, 1983.

Plaintiff's complaint also asserted that the defendants had acted under color of state law to deprive him of his property without due process. Plaintiff alleged that a conspiracy existed between Judge Miller and Mrs. Collins in order to thwart the recusal hearing to permit Judge Miller to remain on the bench, during the pendency of this action despite a clear inability to serve. Plaintiff alleged that three actions, either directly or indirectly, individually or in conjunction, acted to deprive him of due process. They are: "(a) The denial of the right to subpoena witnesses and present them at the hearing on the motion to recuse ... (b) the trial by an incompetent judge, and a trial of a judge acting without authority under Georgia law ...; and (c) the denial of the right granted by State law to have the motion to recuse transcribed by a court reporter for subsequent review by the appellate courts...." In the June 30, 1983 order the court dismissed that part of plaintiff's due process claim which asserted that the denial of plaintiff's right to have the hearing on the motion to recuse transcribed by a court reporter was a denial of due process. Therefore, plaintiff's only remaining federal claims [2] are that he was deprived of his constitutional rights by a conspiracy between Judge Miller and defendant Collins to thwart the recusal hearing, and that Judge Ison's order quashing the subpoenas deprived him of due process.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In her motion for summary judgment defendant argues that plaintiff's remaining claims are barred by the doctrine of *res judicata* because they either were or should have been adjudicated in the Georgia courts. Plaintiff has responded to defendant's motion by vigorously arguing that issues of fact remain concerning the competence of Judge Miller and whether the motion to recuse was improperly decid-

**2.** Plaintiff's state law claims were also dismissed on June 30.

ed based on perjured affidavits and the absence of the witnesses whom plaintiff had subpoenaed. Neither side has raised or otherwise addressed the more fundamental issue of whether this court has jurisdiction in this case. Because this court must examine whether subject matter jurisdiction exists on its own motion if necessary, the court shall examine the question *sua sponte.*

Although plaintiff's complaint is couched as a suit brought under 42 U.S.C. § 1983 to enjoin violations of plaintiff's constitutional rights, when boiled down to its essential elements it is no more than a suit to set aside a judgment on the grounds that the judgment was obtained by fraud. Plaintiff asks this court to enjoin Mrs. Collins "from seeking any further attachments or process to enforce any of said judgments and that this Court further declare that said judgments are void and unenforceable as violative of the due process rights of this Plaintiff." Plaintiff argues that Judge Miller was incompetent to render the judgments in the divorce case. Since Judge Miller's competence was adjudicated by Judge Ison in denying the motion to recuse, Mr. Collins argues that the denial of the motion to recuse was improper and based upon perjured affidavits and an inadequate record. It follows therefore that the first hurdle the court must overcome is whether it has the power to review the denial of the motion to recuse. If this court has no such power, then the court cannot inquire into whether or not the recusal was proper or whether or not Judge Miller was competent to render a judgment.[3]

The question then becomes: Can a federal district court enjoin enforcement of a state court judgment that has been obtained by fraud and which therefore deprives the plaintiff of property without due process of law? The starting point in the court's analysis is *Rooker v. Fidelity Trust*

*Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), in which the Court held that federal district courts have no jurisdiction to "entertain a proceeding to reverse or modify the judgment (of a state court) for (constitutional) errors.... To do so would be an exercise of appellate jurisdiction. The jurisdiction of the district courts is strictly original." *Id.* at 416, 44 S.Ct. at 150. *Rooker* was relied upon by the Fifth Circuit in *Warriner v. Fink*, 307 F.2d 933 (5th Cir.1962), *cert. denied*, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963). In that case the plaintiff argued that a foreclosure on her property had been obtained by fraud. She had appealed the foreclosure to the Supreme Court of Florida. However, evidence in the record supported plaintiff's contention that defendant had made fraudulent representations to the Supreme Court of Florida which dismissed her appeal in reliance on such representations. Plaintiff then filed her action in the district court seeking to enjoin the defendants from enforcing the final decree of foreclosure and attacking that decree as void. Plaintiff argued that federal jurisdiction was based upon the first, fifth and fourteenth amendments of the Constitution, as well as on the due process and equal protection clauses. However, the court of appeals found that the district court had no jurisdiction to enjoin the enforcement of or to set aside or hold null and void the decree of foreclosure:

> The plaintiff has appeared and argued the case very creditably in her own behalf and has impressed the Court with her sincerity. It is for that reason and to enable her the more easily to petition for review of our judgment in the Supreme Court of the United States, if she so desires, that we have set forth the facts alleged in the complaint in such detail. The plaintiff insists that through no fault of her own she is being deprived of valu-

---

**3.** The fact that a court of competent jurisdiction has adjudicated the issue of whether Judge Miller should have been recused from further involvement in the divorce would preclude re-litigation of that issue in this court under the doctrine of *res judicata.* Plaintiff, however, ar-

gues that he never had a full and fair opportunity to litigate that issue because of the various alleged improprieties. Thus, the focus is on the process by which the motion to recuse was adjudicated.

able properties without any hearing on the merits of her defense to the bill of foreclosure and thus without due process of law. Her argument is that the purported final decree of foreclosure is an absolute nullity because of fraud practiced on the court, and that a federal district court can enjoin a party from enforcement of such a void judgment under such authorities as *Simon vs. Southern Railway Company*, (1915) 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492, and *Johnson vs. First National Bank*, (10 Cir.1955) 223 F.2d 31.

We are convinced, however, that when the plaintiff failed to seek review by the Supreme Court of the United States of the judgment of the Supreme Court of Florida of January 23, 1952 dismissing her appeal, she lost the only avenue of relief available to her in the federal courts. In the light of the anti-injunction statute, 28 USCA § 2283, and of a number of decisions of the Supreme Court and of this and other Circuits, in which the principles are fully discussed, we hold that the federal district court had no jurisdiction to enjoin the enforcement of, or to set aside, or hold null and void the decree of foreclosure entered by the Circuit Court of Monroe County, Florida. *Warriner v. Fink*, 307 F.2d 933, 936 (5th Cir.1962) (citing *Toucey v. New York Life Insurance Co.*, 314 U.S. 118 [62 S.Ct. 139, 86 L.Ed. 100] (1941), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 [44 S.Ct. 149, 68 L.Ed. 362] (1923), *Chicago Life Ins. Co. v. Cherry*, 244 U.S. 25 [37 S.Ct. 492, 61 L.Ed. 966] (1917), *Hanna v. Home Insurance Co.*, 281 F.2d 298 (5th Cir.1960), and *Manufacturers Record Publishing Co. v. Lauer*, 268 F.2d 187 (5th Cir.1959)). *See also* Wright, *Law of Federal Courts* § 47 p. 205 (3rd Ed. 1976); 13 ALR 2d § 23, pp. 467 *et seq.*

*Warriner v. Fink* has never been overruled and has been relied on as recently as 1981 in the decision of *Reynolds v. Georgia*, 640 F.2d 702 (5th Cir. Unit B), *cert. denied*, 454 U.S. 865, 102 S.Ct. 326, 70 L.Ed.2d 165 (1981). The rationale for the decisions in *Rooker, Warriner,* and *Reyn-*

*olds* was the conclusion that the relief sought by plaintiff necessarily required the district court to undertake an appellate review of the state court proceedings. Such an appellate review was outside the jurisdiction of the district courts, which have only original jurisdiction. As the court stated in *Reynolds:*

> At the outset, the Court recognizes that a State Court Judgment which violates settled legal principles may run afoul of the guarantees of the due process clause, especially if such a judgment has the effect of taking property from a citizen and giving it to the State.... However, the fact that an arbitrary judgment of a State Court may abridge the Constitution does not necessarily mean that such a judgment gives rise to a claim for violation of Constitutional and Civil Rights in Federal District Court. *If to review such a judgment for constitutional violations of that character is essentially an exercise of appellate jurisdiction, a Federal District Court, whose jurisdiction is strictly original, has no power to entertain such a suit.*

In this case, plaintiff asserts that she is not seeking appellate review of the State Court decision, but that she is stating a new and distinct claim based on the injury caused by the decision. This contention, however, is not borne out by the relevant authorities and, indeed, is refuted by the prayers of her own complaint.

.     .     .     .     .

In the case at bar, plaintiff asks this Court to "declare that ... the rulings of the Superior Court of McIntosh County, Georgia and the Supreme Court of Georgia ... have deprived her of her property in violation of the United States Constitution," ... "[i]ssue a permanent injunction enjoining the defendants ... from implementing or taking advantage of the judgments of the Supreme Court of Georgia or the Superior Court of McIntosh County ..." ... and "[d]eclare null and void the judgments of the Supreme Court of Georgia and the Superior Court of McIntosh County...." Despite plaintiff's

portrayal of her dissatisfaction with the Georgia courts' decisions as a distinct injury, it is manifest from the prayers of her complaint that she seeks essentially an appellate review of those decisions. "It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause...." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 175, 2 L.Ed. 60 (1803). "[T]o reverse or modify [a] judgment ... would be an exercise of appellate jurisdiction." *Rooker,* 263 U.S. at 416, 44 S.Ct. at 150. The addition of several new defendants in this action does not alter the prohibited character of relief she seeks, ... *nor is it significant that she presents her claim under section 1983 as well as under the Constitution. Reynolds v. State of Georgia,* 640 F.2d at 705–07 (emphasis added).

*Warriner* and *Reynolds* stand for the proposition that a federal district court lacks subject matter jurisdiction to set aside state court judgments where to do so would necessarily require an appellate-type review of the state court proceedings. However, *Warriner* and *Reynolds* were criticized and rejected by the court in *Gresham Park Community Organization v. Howell,* 652 F.2d 1227 (5th Cir. Unit B 1981). In *Gresham Park* the plaintiffs sought an order from the district court vacating and setting aside a state court judgment which enjoined plaintiffs from picketing in front of a liquor store. The court discussed and rejected the line of cases holding that the district court had no power to declare a state court judgment null and void. Relying on Fed.R.Civ.P. 8, under which complaints should be read liberally to do substantial justice, the court declared that "[w]here a party asks a federal court to declare a state court judgment null and void, we should consider this as praying for an injunction enjoining its enforcement." After declaring that district courts had original jurisdiction under 28 U.S.C. § 1343 to issue injunctions restrain-

ing violations of civil rights, the court went on to rule that the district court had properly abstained from issuing such an injunction under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ Although the *Gresham Park* court criticized the *Warriner* and *Reynolds* decisions it did not overrule them.[4] This court must therefore harmonize the *Gresham Park* case with the earlier cases if possible. One method of harmonizing the cases would be to examine the fact patterns to determine whether different facts necessitated different results. In certain types of cases the federal courts have been more willing to act than in others. As a broad rule it appears that where the state court judgment is constitutionally suspect on its face the federal court has been willing to hear an attack on the judgment under 42 U.S.C. § 1983. *See Gresham Park Community Organization v. Howell,* 652 F.2d 1227 (5th Cir. Unit B 1981) (state court had enjoined constitutionally protected picketing); *Henry v. First National Bank of Clarksdale,* 595 F.2d 291 (5th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980) (state court had issued broad injunction against a boycott organized to protest racial discrimination); and *Machesky v. Bizzell,* 414 F.2d 283 (5th Cir.1969) (state court had enjoined picketing and other speech in support of a political boycott). In cases such as these, where the state court judgment itself may violate protected constitutional rights, the federal court's role as a guardian of civil rights is most readily apparent. The district court has both the authority and the duty to enjoin violations of constitutional rights under 28 U.S.C. § 1343. Concerns about comity and federalism, while not entirely absent in such cases, give way to the ultimate duty of the court to protect constitutional rights, especially where the state system has been unable or unwilling to protect those rights itself.

---

**4.** Decisions of the former Fifth Circuit can be overruled by the Eleventh Circuit sitting *en banc. Bonner v. City of Pritchard,* 661 F.2d at

1210. The *Gresham Park* opinion was not an *en banc* opinion and therefore did not overrule the prior cases.

■ In other cases, however, the federal courts have been more reluctant to intervene in the state system. The rule in such cases might be stated as follows: Where the state court judgment is not constitutionally suspect on its face and where the state has provided appellate review sufficient to accord the federal plaintiffs the essentials of due process,[5] the federal courts have been extremely reluctant to entertain a suit brought under 42 U.S.C. § 1983. The courts, however, have had some difficulty articulating a consistent rationale for such failure to intervene. In *Warriner v. Fink*, 307 F.2d 933 (5th Cir. 1962) the court found that the district court lacked subject matter jurisdiction, partly because it believed the Anti-Injunction Act, 28 U.S.C. § 2283, prohibited injunctions against the enforcement of a state court judgment. In *Reynolds v. Georgia*, 640 F.2d 702 (5th Cir. Unit B 1981), the court of appeals agreed with the district court's conclusion that the relief sought by the plaintiffs required an exercise of appellate jurisdiction and therefore exceeded the jurisdiction of the court. In *Cheramie v. Tucker*, 493 F.2d 586 (5th Cir.), *cert. denied*, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974), a suit brought under 42 U.S.C. § 1983 against state appellate judges who had reversed an award of damages in a negligence case, the court did not address the jurisdictional issue but instead concluded that the issues which the trial court would have had to consider in order to grant the relief requested had already been adjudicated by the state courts and were therefore barred by the doctrine of *res judicata* and collateral estoppel. As was pointed out in *Gresham Park*, a holding that re-litigation is barred by *res judicata* is a holding on the merits and is, therefore, an implicit finding that subject matter jurisdiction exists. 652 F.2d at 1235. By whatever name it is called, however, the principle remains the same. Federal courts are not in the business of hearing attacks on state court judgments where the judgment is not on its face violative of the Constitution and where the state has provided an opportunity for appellate review to satisfy the requirements of due process.

■ The state court judgment which plaintiff attacks in the present case does not on its face violate any constitutional rights of plaintiff. It is simply a garden variety conclusion to an everyday domestic dispute.[6] Plaintiff claims that the judgment was obtained by fraud, but he has not made any showing that the Georgia appellate courts failed to accord him due process. The issues which he seeks to litigate in this court either were, or should have been, presented to the Georgia appellate courts.[7]

After consideration of all the prior cases this court concludes that plaintiff's case must be dismissed. Other decisions of this circuit and the Supreme Court have almost invariably come out this way, employing a number of different means of analysis. It seems to this court that no matter what the

---

5. The existence of an opportunity for appellate review is important because it insures that even if there was fraud or some other irregularity sufficient to render the trial court's judgment violative of the due process clause, the trial court's judgment can be reversed or vacated by the state. "[T]he existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." *Parratt v. Taylor*, 451 U.S. 527, 542, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981) (quoting *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir.1975).

6. *See* Note 3, *supra*.

7. In order to determine whether or not an injunction should issue this court would necessarily have to resolve such questions as whether certain subpoenas should or should not have been quashed, whether certain affidavits were or were not false, and whether a trial judge was or was not competent under Georgia law. The court cannot see how such a determination could be anything other than an appellate review of the state court proceedings. These are issues which were raised or should have been raised on direct appeal to the Georgia appellate courts and from there to the United States Supreme Court. For this court to consider such questions would necessarily involve an exercise of appellate review and would therefore exceed its jurisdiction.

rationale, this outcome is dictated by considerations of finality and comity, and the court's statutory obligation to give full faith and credit to judgments of state courts. 28 U.S.C. § 1738. To be sure, these factors would be forced to stand down if constitutional rights were truly at issue. The plaintiff here claims a deprivation of due process. He shows, however, that he had an opportunity for appellate review. He does not allege the abuse of discretion in the denial of his appeal, nor does he attack the neutrality of that tribunal. Accordingly, the court would find that plaintiff has failed to state a claim under 42 U.S.C. § 1983 because the existence of adequate review procedures under Georgia law has accorded plaintiff sufficient due process. *See Parratt v. Taylor, supra.*

### III. CONCLUSION.

In sum, plaintiff's motion to substitute counsel is DENIED for failure to comply with Local Rule 71.7. Defendant's motion for summary judgment and plaintiff's motion for consolidation are MOOT. The court hereby DISMISSES, on its own motion, plaintiff's complaint for failure to state a claim for which relief can be granted.