**Jaxie LEE, Plaintiff,**

v.

**Sheriff Bill HUTSON and Cobb County, Defendants.**

**Civ. A. No. C84–179A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 11, 1984.

it failed to decide specific issues that could have  been presented.")

958

Ralph Goldberg, Atlanta, Ga., for plaintiff.

Theodore Freeman, Drew, Eckl & Farnham, Atlanta, Ga., David P. Hartin, Sams, Glover & Gentry, Marietta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This case involves an action pursuant to 42 U.S.C. § 1983 alleging that the plaintiff's termination from her former employment in the Cobb County Sheriff's Department violated her rights under the Ninth and Fourteenth Amendments of the United States Constitution. Additionally, plaintiff has asserted that her rights under Georgia state law have also been violated. The case is now pending before the court on the following motions: a motion by the plaintiff to strike two of the defenses asserted in defendants' answer; a motion by the plaintiff to disqualify counsel for defendants; a motion by plaintiff to compel discovery; a motion by plaintiff seeking additional discovery; and a motion by plaintiff for partial summary judgment or in the alternative for disqualification of defendants' counsel. These motions shall be treated *seriatim*.

## I. THE MOTION BY PLAINTIFF TO DISQUALIFY.

On March 28, 1984 the plaintiff moved to disqualify defendants' counsel Hartin from representing both defendants Bill Hutson, the Sheriff of Cobb County, and Cobb County. The basis for this motion is that plaintiff perceives a conflict of interest between representing the county and the county officer. The defendants' response to this motion to disqualify is to admit plaintiff's assertion that the acts of defendant Hutson are also the acts of Cobb County. The defendant argues, therefore, that should plaintiff prevail on the merits of this case, any judgment would be assessed against and paid by the county. However, the defendant Sheriff and the defendant county remain exposed to potentially conflicting interests with respect to the pendent state claims, given the county's assertion of sovereign immunity as a defense to those state claims.

Joint representation of a municipality and individual defendants has been held to represent a conflict of interest because of the potentially adverse interests of the defendants. *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir.1984); *Shadid v. Jackson,* 521 F.Supp. 87 (E.D.Tex.1981). The basis for the disqualification lies in the duty of complete loyalty of an attorney to his client and the danger that in cases of joint representation such as this, that loyalty will be divided. DR 5–105 of the Code of Professional Responsibility prohibits an attorney from accepting or continuing employment if the interests of another client may impair the independent professional judgment of the lawyer.[1] Similarly, Rule

---

1. (A) A lawyer should decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing

1.7 of the Model Rules of Professional Conduct bars an attorney from multiple representation where the interests of the clients are adverse.[2]

The possibility that the interests of the individual defendants and the municipality in a section 1983 action will be adverse has been thoroughly discussed by the Second Circuit Court of Appeals in *Dunton v. County of Suffolk,* 729 F.2d 903 (1984) and by the district court in *Shadid v. Jackson,* 521 F.Supp. 87 (E.D.Tex.1981).[3]

The court's observation that the multiple representation in this case creates a potential for divided loyalties does not necessarily require that defense counsel be disqualified. Both DR 5–105 and Model Rule 1.7 allow multiple representation if the attorney believes that he can adequately represent the interests of each of the clients *and* if each of the clients consents to the multiple representation after a complete and candid consultation as to the possible effects of such representation. *See* DR 5–105(C);[4] Model Rule 1.7(a)(2) and (b)(2).[5] Therefore, the court shall allow defense counsel an opportunity to obtain the *informed* consent of each of the defendants they represent. Defense counsel is DIRECTED to explain to each of the defendants the implications of the common representation and the advantages and risks involved. If the clients consent to such joint representation after such a consultation, then such consent shall be obtained in writing and filed with the court. If the clients express a desire for separate counsel, then a reasonable period of time can be allowed for the acclamation of new counsel, if the substitution is made promptly.

Because DR 5–105 and Model Rule 1.7 protect the interests of the defendants in this action, rather than plaintiffs, and because those defendants should have an opportunity to consent to joint representation by defense counsel, plaintiff's motion to disqualify is DENIED.

## II. THE MOTION TO STRIKE.

Plaintiff has moved the court, on March 29, 1984, to strike defendants' affirmative defenses numbers 8 and 9 "... for the reason that the same are insufficient as a matter of law." In its response, the defendants concede that defense number 8 is insufficient as a matter of law. Accordingly, plaintiff's motion to strike defense number 8 is GRANTED.

differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

**2.** (A) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) Each client consents after consultation.

(B) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The lawyer consents after consultation.

When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

**3.** The potential for conflict was also raised by the Fifth Circuit in a footnote to the panel opinion in *Van Ooteghem v. Gray,* 678 F.2d 488, 495 n. 7 (5th Cir.1980). Although the panel opinion was vacated by the court's decision to re-hear the case *en banc,* 640 F.2d 12 (1981); Fifth Circuit Local Rule 17, and although the *en banc* opinion did not address the conflict of interest issue, that solitary footnote in the panel opinion stands as evidence that at least some members of the court are concerned about the issue.

**4.** In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each *and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.* (Emphasis added).

**5.** *See* note 2, *supra.*

■ As for defense number 9, the defendants agree that Cobb County has no immunity pursuant to section 1983. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). However, the defendants argue that municipal immunity does apply to plaintiff's state claims. Ga.Code § 36-1-4 provides "a county is not liable to suit for any cause of action unless made so by statute." The plain language of this statute, together with its construction (*see Revels v. Tift County*, 235 Ga. 333, 219 S.E.2d 445 (1975)), establishes that as to plaintiff's pendent state law claims defendant Cobb County is entitled to assert the defense of sovereign immunity, so long as the county is not made amenable to suit by another statute. Therefore, as to defense number 9, plaintiff's motion to strike is DENIED. In summary, plaintiff's motion to strike is GRANTED IN PART and DENIED IN PART.

## III. THE MOTION TO COMPEL.

On April 23, 1984, the plaintiff filed her motion for this court to compel the defendants to produce, pursuant to a request for production of documents, "the complete personnel files of the Cobb County Sheriff's Department (including the disciplinary records) of ... William Moore." (Deletion in original). The plaintiff contends that pursuant to Rule 26(b)(1) of the *Federal Rules of Civil Procedure*, the requested material will be relevant for purposes of impeaching Mr. Moore.

■ The defendants' response to the motion to compel states first that the defendants will refuse to turn over in civil discovery the personnel files of employees not directly involved in the litigation unless there is a showing of "good cause." The defendants point to the case of *Wharton v. Lybrand, Ross Brothers & Montgomery*, 41 F.R.D. 177 (E.D.N.Y.1966), as standing for the proposition that discovery cannot be had simply for the purpose of impeachment, absent a showing of "good cause." The court in *Wharton* does not define its concept of "good cause." It is the view of this court, however, that plaintiff has not made a sufficient showing to justify discovery of this material. The plaintiff will endeavor to show at trial, according to the brief in support of the motion to compel, that "... William Moore, her immediate superior, approved her dissemination of information and that, between the time of the First Grand Jury (which did not return an indictment) and the hearing before the Civil Service Board, Mr. Moore changed his testimony." Plaintiff has not shown that the personnel records of William Moore are in any way relevant to those contentions. Plaintiff has not shown that Moore is likely to be called at trial by either side in a situation adverse to her, requiring her to impeach his credibility. Plaintiff's motion to compel is therefore DENIED, with leave to renew upon a showing that she will be forced to deal with Moore in a cross-examination situation, whether he is called by defendants or by plaintiff as an adverse witness.

## IV. THE MOTION FOR ADDITIONAL DISCOVERY.

■ On June 25, 1984, the plaintiff filed a one-page document entitled "Motion and Brief Seeking Additional Discovery." This pleading purports to represent that the plaintiff has suspended discovery while endeavoring to negotiate a settlement of the case, and needs an extension of discovery at this time in order to depose at least six more witnesses. This pleading does not in any way comply with Local Rule 91.1. It is unaccompanied by an affidavit to support the allegations of fact made therein. Pursuant to the Local Rule, the Clerk should not have accepted this document for filing, and the court will not consider it. The motion for additional discovery is DENIED for failure to comply with the Local Rules.

## V. THE MOTION FOR PARTIAL SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR DISQUALIFICATION.

The plaintiff in this section 1983 action has moved for summary judgment, requesting the court to find that as a matter

of law her rights to due process under the fourteenth amendment to the United States Constitution were violated first because of a failure by the Cobb County Civil Service Board or Sheriff Hutson to provide an adequate list of reasons for her employment termination, and second, because plaintiff alleges that the county's attorney and the defendant sheriff violated plaintiff's rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For the reasons which appear herein, plaintiff's motion for summary judgment is DENIED.

The plaintiff is a former employee of the Sheriff's Department of Cobb County. On November 30, 1983, plaintiff was sent the following notice from the Sheriff:

> You are hereby notified of the termination of your employment with the Cobb County Sheriff's Department effective at 4:00 p.m. on this date. An investigation by the Georgia Bureau of Investigation and the Internal Affairs Unit of the Sheriff's Department has documented evidence that you violated Georgia law (§ 35-3-38, O.C.G.A.) concerning the wrongful dissemination of criminal history information. ...
>
> You are hereby notified that under Civil Service rules and regulations that you have a right to appeal this action to the Cobb County Civil Service Board within ten (10) days.

The plaintiff appealed her termination to the Cobb County Civil Service Board, which conducted a hearing regarding plaintiff's termination on January 17, 1984. The hearing transcript documents that at the hearing the Cobb County Civil Service Board accepted evidence in the form of the testimony of twelve witnesses, and several documents. Exhibit H to Plaintiff's Motion for Summary Judgment. The plaintiff was represented at the hearing, and had an opportunity to cross-examine all witnesses, as well as to call witnesses in her own behalf. At the conclusion of that hearing, the Cobb County Civil Service Board voted three-to-two to uphold the decision of the sheriff to terminate plaintiff's employment. Following that hearing, plaintiff took no

action with respect to state remedies; rather, she filed this section 1983 action alleging deprivations of her right to due process.

In support of her motion for summary judgment, the plaintiff alleges that the failure of the Cobb County Civil Service Board to issue an opinion containing specific findings of fact and conclusions of law violated her due process rights under *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Second, the plaintiff alleges that Cobb County and its sheriff violated her rights to due process in that she alleges that certain of the testimony given before the Board was perjured, a fact which was not revealed to the Board by Cobb County's agents.

The threshold inquiry in a section 1983 action based upon the fourteenth amendment's due process clause is whether the plaintiff was deprived of life, liberty, or property under color of state law. *See Gilmere v. City of Atlanta,* 737 F.2d 894, 905 (11th Cir.1984). Neither party in the present case has argued the question of whether the plaintiff has a property interest in continued employment with Cobb County. The United States Supreme Court has held that

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than an abstract expectation of it. He must, instead, have a legitimate claim of entitlement to it ... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In order to determine whether plaintiff has a property interest in her job under Georgia law, it is necessary to examine the Civil Service Act

which governs her employment. The Georgia Legislature in 1964 passed a special local law respecting Cobb County's Civil Service System. Georgia Laws, 1964 Session, Vol. 2, p. 2502, *et seq.* That law provides that "no employee of any department of office of the County which has been brought under the Civil Service System pursuant to this Act may be dismissed from employment in said department or office except for good cause and in accordance with the rules and regulations of the Civil Service Board...." *Id.* at 2508. The plaintiff, an employee of the Sheriff's Department, is included within the coverage of this act. *Id.* at 2505, section 5. It is apparent from the face of the law that the plaintiff has a property interest in not losing her job unless good cause is shown. This interpretation is borne out by *Brownlee v. Williams*, 233 Ga. 548, 212 S.E.2d 359 (1975), in which the State Supreme Court construed identical language in Fulton County's Civil Service Act as creating a property interest in continued employment. *Id.* at 551, 212 S.E.2d 359. The court therefore concludes that the plaintiff was vested with a property interest in her continued employment under state law. Having determined that, it is apparent that she was deprived of that interest, since her employment was terminated, and that such deprivation was achieved under color of state law, since the officers in question utilized the procedures set out by the state legislature in the Georgia law above cited.

A determination that a person was deprived of a property interest under color of state law, however, does not establish entitlement to a section 1983 remedy. The fourteenth amendment to the United States Constitution protects only against deprivation of a property interest without due process of law. The plaintiff has alleged that she was deprived of her property interest without due process because of alleged irregularities in the conduct of the hearing. It is the opinion of this court, however, that a more fundamental issue is raised by this case. There is no question that both of the alleged due process violations put forward by plaintiff were acts which could not be anticipated. Plaintiff is not challenging the structure of the system provided by the State of Georgia for hearings in employment termination cases. Rather, plaintiff alleges that in one hearing agents of Cobb County engaged in an unauthorized *Brady* violation, and that the Cobb County Civil Service Board or Sheriff Hutson failed to give reasons for their decision, which under Georgia precedent is a violation of state law. *See Brownlee v. Williams*, 233 Ga. at 556, 212 S.E.2d 359.[6] This court is persuaded that the rationales put forward in the cases of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1980), *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and *Gilmere v. City of Atlanta*, 737 F.2d 894 (11th Cir.1984), are controlling in the present case.

In *Parratt v. Taylor*, the Supreme Court held that a section 1983 action for negligent deprivation of property under color of state law would not lie where there were adequate remedies at state law to redress the grievance. The basis of this holding was succinctly stated in the following language approved by the Court:

It seems to us that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the fourteenth amendment's prohibition against "state" deprivations of property; in the latter situation, however, even though there is action "under color of" state law sufficient to bring the amend-

---

6. Cobb County's Civil Service Regulations require provision of a statement of termination and the reasons therefor. Copies of this notice are maintained by the Board (Buckner Affidavit at 2), and are read into the record at the hearing. Plaintiff's Exhibit H to the motion for summary judgment at 2–3. *Brownlee* holds that where provision of reasons is required, inadequacy of the reasons makes the action taken a nullity. 233 Ga. at 556. *See also Scott v. Undercofler*, 108 Ga.App. 460, 133 S.E.2d 444 (1963).

ment into play, the state action is not necessarily complete. ... We may reasonably conclude, therefore, that the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the fourteenth amendment.

451 U.S. at 542, 101 S.Ct. at 1916, citing *Bonner v. Coughlin,* 517 F.2d 1311, 1319 (7th Cir.1975), modified *en banc,* 545 F.2d 565 (1976), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). This term in *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court expanded the *Parratt* rationale to encompass intentional deprivations of property under color of state law. In *Hudson,* the Court noted as follows:

The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur. ... The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.... If negligent deprivations of property do not violate the due process clause because deprivation process is impracticable, it follows that intentional deprivations do not violate that clause provided, of course, that adequate state post-deprivation remedies are available.

—— U.S. ——, 104 S.Ct. at 3203. *Hudson* stands for the proposition that as to both intentional and negligent deprivations of property, the state's action is not complete "until and unless it provides or refuses to provide a suitable post-deprivation remedy." *Id.* at 3204.

The Eleventh Circuit Court of Appeals, in *Gilmere v. City of Atlanta,* 737 F.2d 894, has extended the rationale of *Parratt* to deprivations of liberty interests. *Id.* at

907–08. Plaintiff's complaint in the present case alleges deprivations of property, and, although not encompassed on this motion for summary judgment, deprivations of liberty.

This court has reviewed the law of the State of Georgia respecting the actions taken by civil service boards in counties. Having done so, it appears to the court that there is an adequate post-deprivation remedy under the state law of Georgia sufficient to preclude a section 1983 claim by this plaintiff. In the words of *Parratt,* the plaintiff in this case is not bringing a due process challenge to an "established state procedure." Rather, she alleges that the procedure in place was misused by particular state officials. The laws of the State of Georgia provide an adequate remedy for this situation. As a preliminary matter, the court notes that the Cobb County Civil Service Board can best be characterized as a quasi-judicial body. The procedures under which that Board operates substantiate this conclusion. First, as noted above, any employee who is dismissed shall have the right of appeal to the Civil Service Board, and the Board will hear the appeal at its next regularly scheduled meeting. Georgia Laws, 1964 Session, Vol. 2, at 2508. The decisions of the Board as to whether dismissals were for proper cause are binding on the governing authority of Cobb County. *Id.* The Board keeps records and minutes of its procedures. *Id.* at 2507. In a 1977 amendment to the Cobb County Civil Service Act, the Board was given the power to reverse adverse employment actions which are contrary to the Board's rules and regulations. Georgia Laws, 1977 Session, Vol. 2, at 3212. The procedures under which the Board conducts these hearings were amended in 1978 to provide that

The Civil Service Board of Cobb County, Georgia, and any litigant entitled to appeal before said Civil Service Board is hereby authorized to cause subpoenas to be served upon any person or persons, whether resident or non-resident of the county, requiring the attendance of such person or persons before the Civil Service Board to offer testimony or other

evidence or to offer testimony and other evidence. The Civil Service Board shall have the power to require the production of such books, records, papers and documents as may be necessary to enable the board to carry out its duties under this Act. The Civil Service Board shall also have the right to provide for discovery in the same manner as courts of record of this State have the right to require discovery.

Georgia Laws, 1978 Session, Vol. 2, at 3637–3638. A review of the transcript of the hearing held in the present case further supports this court's view that the Cobb County Civil Service Board operates in a quasi-judicial fashion.

Decisions of the state courts of Georgia also confirm that county civil service boards are quasi-judicial bodies. In *Anderson v. McMurry,* 217 Ga. 145, 121 S.E.2d 22 (1961), the Georgia Supreme Court noted that " ... a quasi-judicial action ... is one in which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure." *Id.* at 150, 121 S.E.2d 22, citing *South View Cemetery Association v. Hailey,* 199 Ga. 478, 34 S.E.2d 863 (1945). In *Anderson,* the State Supreme Court interpreted the laws providing for the DeKalb County Merit Board to create a body which acts in a judicial capacity. The law establishing the DeKalb County Merit Board is very similar to the one establishing the Cobb County Civil Service Board. *See* 217 Ga. at 150–51, 121 S.E.2d 22. A similar result was reached in *Thompson v. Dunn,* 102 Ga.App. 164, 115 S.E.2d 754 (1960), in which the Georgia Court of Appeals held that the Fulton County Civil Service Board acts in a quasi-judicial capacity. As noted above, the Fulton County Civil Service Act is quite similar to the Cobb County Civil Service Act. The court therefore concludes that under Georgia law and under the act creating it, the Cobb County Civil Service Board acts in a quasi-judicial capacity.

The importance of determining that the Civil Service Board acts in a quasi-judicial

capacity lies in the fact that under Georgia law a party aggrieved by one acting in a judicial capacity has the right to petition the superior court of the county for a writ of certiorari to review the acts of that inferior adjudicatory. O.C.G.A. § 5–4–3 provides that

When either party in any case in any inferior adjudicatory or before any person exercising judicial powers is dissatisfied with the decision or judgment in the case, the party may apply for and obtain a writ of certiorari by petition to the superior court for the county in which the case was tried, in which petition he shall plainly and distinctly set forth the errors complained of. On the filing of the petition in the office of the clerk of the superior court, with the sanction of the appropriate judge endorsed thereon, together with the bond or affidavit ... it shall be the duty of the clerk to issue a writ of certiorari directed to the tribunal or person whose decision or judgment is the subject matter of complaint, requiring the tribunal or person to certify and send up all the proceedings in the case to the superior court, as directed in the writ of certiorari.

Although the sanction of the superior court judge is necessary for issuance of the writ of certiorari, *Bellew v. State Highway Department,* 127 Ga.App. 301, 193 S.E.2d 202 (1972), a refusal by the superior court judge to sanction issuance of the writ is reviewable by the Georgia courts of appeal. *Jones v. Anderson,* 106 Ga.App. 590, 127 S.E.2d 719 (1962). From the foregoing, it is apparent that the plaintiff, feeling aggrieved by the decision of the Cobb County Civil Service Board, had the right to petition the Superior Court for a writ of certiorari.

■ Under Georgia law, review under a writ of certiorari is not the same type of appellate review normally thought of in that context. For example, upon certiorari the judge of the Superior Court may exercise original discretion as to the correctness of the verdict, a privilege unpossessed by other courts of review. *Atlantic C.L.R.R.*

*v. Thomas,* 12 Ga.App. 209, 77 S.E. 13 (1913); *Macon v. United States Fidelity and Guaranty Co.,* 41 Ga.App. 774, 154 S.E. 702 (1930). The Georgia Supreme Court elaborated on the scope of review by a superior court judge on certiorari in *Brown v. Mosteller,* 181 Ga. 457, 182 S.E. 519 (1935). *Brown* holds that

> A judge of the superior court, in passing on a certiorari, where questions of fact are involved and the evidence is conflicting, has the discretion to sustain the certiorari, similar to the discretion allowed him in granting a first new trial; and that discretion will not be controlled [by the appellate courts] unless it has been manifestly abused. *Weathersby v. Jordan,* 124 Ga. 68 [,52 S.E. 83]; *Connally Realty Co. v. Nalley,* 38 Ga.App. 292 [143 S.E. 786]. The function of a judge of the superior court, in reviewing the evidence on certiorari, is very similar to that which he exercises in reviewing the evidence upon a motion for new trial. It involves a right and a discretion with which trial judges are clothed, but which reviewing courts do not possess. It is an original discretion, and with it is coupled the right to pass upon the credibility of the witnesses. *A.C.L.R. Company v. Thomas,* 12 Ga.App. 209 [77 S.E. 13].

*Id.* 181 Ga. at 458, 182 S.E. 519. Given the discretion vested in superior court judges in reviewing actions of quasi-judicial bodies on certiorari, it is readily apparent that the plaintiff had an avenue under state law in which she could have presented her arguments respecting the conduct of the Cobb County Civil Service Board hearing. Because the judge of the superior court reviews on certiorari as if he or she were reviewing a motion for a new trial, aggrieved petitioners have the capacity to present arguments that: the verdict is contrary to evidence and justice, O.C.G.A. § 5–5–20; the verdict is against the weight of the evidence, O.C.G.A. § 5–5–21; evidence was illegally admitted or excluded below, O.C.

G.A. § 5–5–22; evidence has been newly discovered, O.C.G.A. § 5–5–23; and any other grounds in the sound exercise of legal discretion by the presiding judge, O.C.G.A. § 5–5–25.

The court is of the opinion that plaintiff's objections to the admission and use of certain evidence before the Cobb County Civil Service Board would permit the sustaining of a petition for certiorari on several of the grounds enumerated above. Most particularly, if, as plaintiff alleges, the county obtained the decision of the Cobb County Civil Service Board by use of uncorrected perjured testimony in violation of *Brady v. Maryland,* and plaintiff had no knowledge at the time of the hearing that those statements were perjured, certiorari would lie on the ground of newly discovered evidence. Of course, if plaintiff in this case cannot meet the newly discovered evidence standard, in that she had at the time of the hearing information that the testimony was perjured, then she cannot be heard to complain that this was not brought to the attention of the Civil Service Board at the time. Moreover, plaintiff's argument that testimony before the Cobb County Civil Service Board was perjured lies within the right of the superior court judge, on certiorari, to pass on the credibility of witnesses. *Brown v. Mosteller, supra,* 181 Ga. at 458, 182 S.E. 519. As noted by *Brown,* if questions of fact are involved, the superior court judge may sustain the certiorari and remand for a new hearing. *See also* O.C.G.A. § 5–4–14. In addition, if the failure of the Cobb County Civil Service Board or Sheriff Hutson to provide reasons for the decision was, as plaintiff alleges, in contravention of *Goldberg v. Kelly,* then that would constitute a legal error which is reversible on certiorari. O.C.G.A. § 5–4–14(b). This is particularly true in view of the fact that Georgia law[7] also requires the furnishing of a notice of the reasons for the action taken.[8]

---

7. *See* note 6, *supra.*

8. This discussion, of course, pretermits the question of whether the notice which the plaintiff

received from Sheriff Hutson, specifying the provision of Georgia law which she was accused of violating, served to provide her with an adequate understanding of the charges against her.

■ For the reasons given above, the court concludes that there appear to be adequate remedies at state law to redress the grievances which plaintiff has brought in this section 1983 action. This court is extremely reluctant to hold that a litigant has stated a claim under section 1983 merely by complaining that irregularities occurred at a quasi-judicial hearing on the question of her employment termination, but without challenging the termination process itself. It is not the role of a Federal District Court to act as a court of appeal from decisions of state quasi-judicial bodies where the state has provided avenues of appeal which the litigant did not utilize. *See Collins v. Collins*, 597 F.Supp. 33 (N.D.Ga.1984).

This court's concern with this question has been aptly voiced by the United States Supreme Court in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1975). In *Bishop*, a city patrolman brought a § 1983 action alleging, *inter alia*, that the reasons given for his discharge from the police force were false. The Supreme Court, per Justice Stevens, held the following:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. *In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways.* The due process clause of the fourteenth amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Id.* at 349–50, 96 S.Ct. at 2079–80 (emphasis added). The court observes that its foregoing discussion would appear to provide the basis for dismissal of the present case. However, no such motion is pending before the court. Therefore, the court merely determines that at this juncture, plaintiff's motion for summary judgment is DENIED.

The court wishes to discuss briefly the role played by *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In *Patsy*, the Supreme Court held that exhaustion of state administrative remedies is not a prerequisite to an action under section 1983. *Patsy* obviously raises the question of how the "no exhaustion" doctrine interacts with *Parratt's* "adequate state remedies" doctrine. This court views the distinction as follows. *Patsy* addressed the situation in which an otherwise colorable § 1983 claim was dismissed for failure to exhaust state administrative remedies. *Parratt*, on the other hand, held that no § 1983 claim was made out where adequate state remedies existed to redress the grievance. This distinction is the same one drawn by the Ninth Circuit Court of Appeals in *Haygood v. Younger*, 718 F.2d 1472 (9th Cir.1983). In that case, the district court had refused to apply *Parratt's* reasoning to the plaintiff's allegation of a deprivation of liberty interest, because the district court believed that to do so would revive the requirement that a section 1983 plaintiff must first ex-

With respect to plaintiff's claim that the Cobb County Civil Service Board did not provide plaintiff with a statement of findings of fact and conclusions of law, the court notes that the Cobb County Civil Service Board is not a party to the action before this court. The defendant Cobb County has argued that because the Civil Service Board is a creation of state law, Cobb County has no control over it. Plaintiff has responded only by stating that the actions of the Board are the actions of Cobb County, rendering the County liable under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977). *Monell* makes a county liable for actions of its decision-makers when those acts constitute county policy. *Id.* at 694, 98 S.Ct. at 2037. Plaintiff misunderstands defendants' argument, which is that the Board, a creature of the state, effectuates *state* policy, not county policy. However, this issue is not dispositive in view of the court's opinion that there are adequate remedies at state law.

haust all state remedies. *Id.* at 1480. The Ninth Circuit rejected this view, observing that it essentially rejects the reasoning of *Parratt,* which is that no § 1983 action is made out where there are adequate state law remedies. Specifically, the Ninth Circuit noted that this rationale

> ... misperceives *Parratt's* import by confusing the rights accorded by the fourteenth amendment's due process clause with the remedy afforded by section 1983. *Parratt* did not deny [plaintiff] Taylor a remedy; it defined his rights. The decision does not require that state remedies be exhausted. It held that no constitutional violation occurred. Resort to federal court in situations encompassed by its rationale is foreclosed.

*Id.* at 1480.

The court would additionally note that *Parratt* itself, as well as *Hudson,* both contemplate that the existence of an adequate state *judicial* remedy precludes a § 1983 action. *Parratt* speaks in terms of a post-deprivation "hearing." 451 U.S. at 541, 101 S.Ct. at 1916. Additionally, *Parratt* cites *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), a case which held that because there were adequate state tort remedies at law, dismissal of a § 1983 claim was proper. *Parratt* 451 U.S. at 542–43, 101 S.Ct. at 1916–17. Similarly, in *Hudson v. Palmer,* the rationale denying the plaintiff's § 1983 claim rested squarely on the availability under Virginia law of common law remedies. This court concludes that the availability of adequate state judicial remedies, under *Parratt, Hudson,* and *Gilmere,* dictate a holding that plaintiff has not stated a claim under section 1983. Thus, *Patsy* is inapposite.

The plaintiff has argued as an alternative to the motion for summary judgment that if the motion for summary judgment is denied, David Hartin, defendant's counsel, must be disqualified since plaintiff may call him as a witness. Given the court's rationale in denying plaintiff's motion for summary judgment, it is unnecessary for the court to consider this issue. If an appropriate motion to dismiss is brought, and the court grants it, there would be no need to disqualify Hartin. Therefore, the alternative motion to disqualify is DENIED, with leave to renew pending the court's further disposition of this case.

## VI. CONCLUSION.

In summary, plaintiff's motion to disqualify on the grounds of conflict of interest is DENIED, subject to defense counsel's obtaining consent from his clients to the multiple representation. Plaintiff's motion to strike is GRANTED IN PART and DENIED IN PART. Plaintiff's motion to compel is DENIED. Plaintiff's motion for additional discovery is DENIED for failure to comply with the Local Rules. Finally, plaintiff's motion for summary judgment or in the alternative for disqualification is DENIED.