James Thomas PATTERSON,
Sr., Plaintiff,

v.

Lawrence L. AIKEN, et al., Defendants.

Civ. A. No. C85–3501A.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 31, 1985.

James Thomas Patterson, Sr., pro se.

Jeffrey R. Nickerson, June Ann Kirkland, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This civil action, filed *pro se* by the plaintiff *in forma pauperis,* is before the court for a frivolity determination pursuant to 28 U.S.C. § 1915(d). While it is the customary practice for this court to forward *in forma pauperis* lawsuits to the Magistrate for a determination of indigency, and then forward the file to a district judge for a determination of frivolity, prior to authorizing the service of process, in the instant case this procedure was not followed. The Clerk brought the error to the court's attention immediately after summonses were issued to all of the defendants named in this lawsuit, and the court determined that in the interest of avoiding needless cost and expense to those defendants so served, it would undertake the frivolity determination immediately. Having done so, the court concludes that this complaint must be dismissed as frivolous.

The factual allegations on which this complaint is based consist of an extensive recitation of the various grievances which

plaintiff has with respect to the way other judges of this court handled four prior lawsuits filed by this plaintiff. This court has taken judicial notice of its own records, and has reviewed the progress of plaintiff's prior lawsuits through this court. *See Duhart v. Carlson,* 469 F.2d 471 (10th Cir. 1972), *cert. denied,* 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973). The earliest lawsuit on which plaintiff bases his complaints in the action presently before this court was Civil Action No. C75–1631A, an antitrust action, in which plaintiff's corporation, Southway Theatres, sued several film distributors and theater chains. That action was dismissed in its entirety for want of prosecution by Judge Freeman of this court on March 22, 1985. Appeal was taken on April 15, 1985, and the action is presently pending before the United States Court of Appeals for the Eleventh Circuit. The second lawsuit which plaintiff filed in this court was brought in his own name, and in the name of the National Independent Theatre Exhibitors, Inc., and was also an antitrust lawsuit against certain motion picture industry companies. The Civil Action No. on that case was C78–2060A. That action was concluded after a lengthy trial held before Judge Shoob of this court in August and September of 1982. Judgment was duly entered, pursuant to the jury verdict, in favor of the defendants and against the plaintiff, and the judgment was affirmed by the United States Court of Appeals for the Eleventh Circuit on March 7, 1984. Civil Action No. C81–618A was a related case to Civil Action No. C78–2060A, was also an antitrust lawsuit, and was concluded when Judge Shoob granted summary judgment against the plaintiff and in favor of the defendants on grounds of *res judicata* from the issues resolved in C78–2060A. The judgment in C81–618A was also affirmed on appeal by the United States Court of Appeals for the Eleventh Circuit. The fourth case filed by plaintiff in this court, also an antitrust action, was also a lawsuit against several film distributors. The named plaintiff in that action, Civil Action No. C80–445A, was the Screen Advertising Film Fund Corporation. That

action was dismissed for want of prosecution by Judge Charles A. Moye, Jr., of this court on July 8, 1985. Plaintiff's appeal time on that action has not yet run.

The complaint presently before the court was filed by the plaintiff on July 15, 1985. In it, plaintiff has sued fifteen attorneys, some of whom represented him in the four above-referenced actions, some of whom represented defendants in the above-referenced actions, and some of whom turned down plaintiff's case when he offered it to them. The plaintiff has additionally sued eleven film distribution companies, motion picture manufacturers, or executives in those fields, all of whom were named defendants in one or more of the above-referenced lawsuits. Additionally named defendants are the state of Georgia, the state bar of Georgia, and three United States District Judges from this court: Richard C. Freeman, Charles A. Moye, Jr., and Marvin H. Shoob. The complaint prays for damages in the amount of $350,000,000.00.

The facts on which the plaintiff predicates the alleged liability of these 40 defendants consist in the main of allegations that plaintiff's lawyers abandoned him and otherwise committed malpractice in the other four suits he filed (pages 15, 16, 19, 24, 25, 27, 28–29, 30–31). The plaintiff additionally complains of witnesses or lawyers in these four lawsuits who lied, suborned perjury, or otherwise abused discovery, allegedly to his prejudice (pages 18–19, 20–21, 21–22). With respect to the defendant judges, the complaint contains numerous references to acts on the part of those officers taken in the course of granting or denying motions, ruling on the admissibility of evidence, ruling on motions for change of venue and the like, and ruling on motions to disqualify. The final paragraph of the factual allegations of this complaint consist of plaintiff's complaints regarding the manner in which the state of Georgia handled his complaints against his own attorneys and opposing counsel. The complaint alleges that plaintiff is entitled to relief on seven theories. Count I is a complaint for breach of the contract of repre-

sentation between plaintiff and his attorneys in Civil Action No. C75–1631A. The defendants in that count are not of diverse citizenship with the plaintiff, and therefore that count has no independent basis for federal jurisdiction. The same is true of Count II, in which plaintiff asserts a claim for breach of the contract of representation against his attorneys in Civil Action Nos. C78–2060A, C80–445A, and C81–618A. Those defendants are not of complete diversity with the plaintiff, and therefore there is no independent ground of federal jurisdiction. In Count III, the plaintiff attempts to assert an antitrust violation on the part of all 40 of these defendants for conspiring to preclude him from representing other people before this court, and to deny him legal representation. Count IV of the complaint names the state of Georgia, and seeks to impose liability on the state for having been involved in the licensing of attorneys, which plaintiff alleges has created a monopoly. Count V of the complaint alleges that all of the defendants have combined to "obstruct justice" in all four of plaintiff's lawsuits. This count does not allege that plaintiff has recently discovered anything that had any bearing on any of the four lawsuits he has had in this court; rather, Count V consists of a re-hash of complaints plaintiff made during the course of litigation of those four lawsuits. Count VI of the complaint alleges that the three federal judges, together with five of the named attorney-defendants, have committed the tort of interference with plaintiff's contract with his own attorneys. Finally, Count VII alleges that the three federal judges named in the complaint conspired to deprive Patterson of due process of law by influencing each other to bias against him, and by inducing his attorneys to abandon his cases.

■ The only two bases of federal jurisdiction present in this complaint are: first, plaintiff's claims in Counts VI and VII that federal officers (to wit, the federal judges) have deprived him of due process, were biased, and induced his attorneys to break their contract with him; and second, the antitrust claims purported to be encompassed by Counts III and IV of the complaint. Because the court concludes that the named federal judges are entitled to absolute judicial immunity for the acts as alleged in this complaint, and because the court has concluded that plaintiff lacks standing to assert the antitrust injuries which the complaint purports to contain, there is no basis for federal jurisdiction over this complaint, and it will be dismissed as frivolous.

First, with respect to the immunity of the defendant judges, the court notes that such immunity has been part of our common law for many years. See, e.g., Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1872). There are many policy reasons why the law of this country confers absolute immunity upon judges from liability for damages in civil lawsuits. First, and foremost, is that it is in the public interest for judges to be able to conduct themselves in an independent manner, without fear of the consequences which may result if they are liable to be sued later. In *Butz v. Economou,* the Supreme Court noted that "absolute immunity is ... necessary to assure that judges ... can perform their respective functions without harassment or intimidation." 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1977). In *Dennis v. Sparks,* the Court stated the rationale even more clearly:

> Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption.

*Dennis v. Sparks,* 449 U.S. 24, 31, 101 S.Ct. 183, 188, 66 L.Ed.2d 185 (1980). The second policy reason for immunity, related to the first, is to spare the decision-maker the diversion of attention created when, every time he rules against a litigant, he may be made to answer civilly for the ruling. *See Butz, supra.* The third policy reason favoring absolute immunity for

judges is that there is a value to repose in resolving a controversy. As the Court noted in *Butz, supra,* "Controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus...." 438 U.S. at 512, 98 S.Ct. at 2913. *See also Mason v. Melindez,* 525 F.Supp. 270, 277 (W.D.Wis.1981).

In the seminal case on the question of judicial immunity, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Court noted that the fourth reason for judicial immunity is that there are courts of appeal in this country to provide an avenue to review the actions of judges which are alleged to be erroneous, biased, or otherwise corrupt:

> [I]mmunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.... It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. *His errors may be corrected on appeal,* but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

386 U.S. at 554, 87 S.Ct. at 1218 (cites omitted) (emphasis added).

■ Given the value of absolute immunity, it remains for this court to determine whether the conduct which this complaint alleges on the part of the defendant judges falls within the scope of immunity. In *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Supreme Court established a two-part test for determining whether a judge enjoys absolute immunity for his conduct. The first question is whether the judge, in performing the acts in question, was dealing with the parties in his judicial capacity, and whether the acts were of the sort normally performed by judicial officers. 435 U.S. at 362, 98 S.Ct. at 1107–08. If the answer to this first question is no, then the court must determine that the judge's conduct is not immune. If the answer is yes, then the court must determine the second prong of the test set out in *Stump:* Whether the judge's conduct fell clearly outside his subject matter jurisdiction. 435 U.S. at 359–64, 98 S.Ct. at 1106–08. *See also Emory v. Peeler,* 756 F.2d 1547, 1553 (11th Cir.1985). The complaint in this case makes no allegation that any of the defendant judges acted without subject matter jurisdiction. The complaint additionally does not allege that any of the parties had any contact with the defendant judges in anything other than the judge's judicial capacity. In other words, there is no allegation that the judges' actions in these cases were prompted by personal motivation, or constituted the use of the office of judge as an offensive weapon despite the fact that no party had invoked the judicial machinery. *Compare Harper v. Merckle,* 638 F.2d 848 (5th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). Thus, the sole question for the court to determine in deciding whether the judges are immune for the conduct alleged in this complaint is whether the actions alleged are those usually performed by judges. As noted above, immunity is not waived even if the actions on the part of the judge were grievously erroneous, or prompted by malice or corruption. *Pierson v. Ray, supra; see also Dennis v. Sparks, supra,* 449 U.S. at 31, 101 S.Ct. at 188. In determining the question of whether the act undertaken was a "judicial act," then, the court focuses on the act itself and not the motivation behind the judges' conduct. The *Stump* case, from the Supreme Court, phrases the test as follows: "whether it is a function normally performed by a judge." 435 U.S. at 362, 98 S.Ct. at 1107. *See also McAlester v. Brown,* 469 F.2d 1280 (5th Cir.1972).

■ Applying this standard to the actions alleged in the instant complaint, the court finds that plaintiff's claims that the defendant judges have obstructed justice, have induced his attorneys to breach their contract with him, and have deprived him of due process of law, are frivolous, since the judges are immune. In the complaint, the factual recitation on which plaintiff rests his claim of liability contains the following alleged actions by the defendant judges:

1. On September 22, 1982 Judge Shoob made "extrajudicial" derogatory remarks to defendant Flint (plaintiff's attorney at the time) about plaintiff Patterson.

2. During 1983 and the first month of 1984, Judge Shoob held "extrajudicial conversations" with Judges Moye and Freeman, "the effect of which was to prejudice defendants Moye and Freeman against litigation associated with Patterson."

3. Judge Freeman, in Civil Action No. C75–1631A, denied plaintiff's motions for substitution, to appear *pro se*, and for default judgment, doing so by "ignoring" plaintiff's argument that the defendants in that action were interfering with his efforts to obtain new counsel.

4. Judge Freeman, in Civil Action No. C75–1631A, denied Patterson's motion for a change of venue based upon bias.

5. In March 1985 Judge Freeman dismissed case number C75–1631A for failure to prosecute.

6. In 1980 Judge Shoob, in Civil Action No. C78–2060A, denied plaintiff's motion to add parties.

7. Judge Shoob, despite being advised that certain discovery materials were perjurious, and despite being advised that certain of the defense counsel in Civil Action Nos. C78–2060A and C81–618A had failed to comply with discovery requests, granted sanctions against plaintiff Patterson and in favor of the defendants, in open court on April 2, 1982.

8. Judge Shoob did not respond to a letter sent by plaintiff to him on April 5, 1982 in which he complained of perjury, concealment of evidence, and various other alleged acts of wrongdoing by opposing counsel in the case.

9. During the trial of Civil Action No. C78–2060A, Judge Shoob allegedly:

a) Refused to admit certain documents plaintiff wanted admitted;

b) Refused to allow certain witnesses to be impeached;

c) Allowed the defendants to introduce irrelevant and prejudicial evidence;

d) Prejudiced the conspiracy evidence and harassed plaintiff's lawyer;

e) "Blessed" the introduction of allegedly perjurious testimony;

f) Permitted a witness to make false statements under oath;

g) Refused to permit impeachment of a witness;

h) Directed a verdict on certain of the counts.

10. Judge Shoob declined to disqualify himself on plaintiff's motion in Civil Action No. C78–2060A and C81–618A.

11. Judge Shoob granted summary judgment in Civil Action No. C81–618A on the basis of collateral estoppel and *res judicata* from Civil Action No. C78–2060A.

12. Judge Moye dismissed two of the named plaintiffs in Civil Action No. C80–445A on the basis of lack of standing.

13. Judge Moye reopened the discovery period in Civil Action No. C80–445A, on motion of the defendants.

14. Judge Moye denied plaintiff's motions to substitute himself as plaintiff to proceed *pro se* in Civil Action No. C80–445A.

15. Judge Moye "ignored" plaintiff's motion for judgment by default in Civil Action No. C80–445A.

16. Judge Moye granted summary judgment for certain of the defendants in Civil Action No. C80–445A, and after remand by the court of appeals allegedly told the plaintiff that he planned to direct a verdict for the defendants at trial of the case.

17. On April 1, 1985, Judge Moye told plaintiff Patterson in chambers that Patterson must locate counsel by May 15, 1985, or face dismissal for want of prosecution.

18. Judge Moye denied plaintiff's motion for a change of venue on the basis of the judge's alleged bias.

19. Judge Moye dismissed Civil Action No. C80–445A for want of prosecution.

It is abundantly clear to this court that those acts contained in this complaint, numbered one through nineteen, above, are beyond any doubt judicial acts on the part of the defendant judges. The only acts alleged in this complaint which require any discussion at all are those numbered one and two above, in which the plaintiff alleges that Judges Shoob, Freeman, and Moye held "extrajudicial" conversations in which they spoke in a derogatory manner about the plaintiff, such that plaintiff's attorneys later withdrew from the case. In view of the fact that this complaint does not allege that any of these judges had any contact with this plaintiff except through the lawsuits before them, the court has concluded that the conversations in question were "judicial acts" and therefore the judges are immune from liability.

As noted above, it is the nature of the act and not the intention with which it was done which resolves the question of whether it was a "judicial" act. Therefore, even if the judges conspired together to force plaintiff's attorneys to withdraw, in the hope of eliminating the lawsuits, the issue is whether having discussions with counsel, and commenting to counsel about their clients are "judicial" acts. The role of a judge, particularly in the federal system, is much more wide-ranging than merely presiding at trial. Judges supervise discovery, often participate in settlement negotiations if the parties request it, and are charged with the general responsibility for management of their case loads and the lawsuits which are before them. Discussing a client, or a party, with an attorney is an integral part of that process. A judge may make a remark about a client which the client could construe as "derogatory" merely by telling the attorney that he does not believe the client has a claim, and that the jury is unlikely to find in his favor at trial. However, such statements are quite common in settlement negotiations. When judges undertake to discuss with lawyers the cases or parties before them, such discussions are clearly judicial acts, where, as here, there is no connection between the judge and the litigants except through the case.

The case books are rife with cases in which, accepting plaintiff's allegations as true, what society would consider reprehensible conduct on the part of the judge has nonetheless been held to be an immune judicial act. In *Dennis v. Sparks*, the Supreme Court held that a judge was entitled to full judicial immunity even if he had collaborated with the opposing side to violate the plaintiff's civil rights. 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). A similar holding is found in *Scott v. Dixon*, 720 F.2d 1542 (11th Cir.1983), *rehearing denied*, 729 F.2d 1468, *cert. denied*, —— U.S. ——, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). In *Snead v. Kirkland*, 462 F.Supp. 914 (E.D.Pa.1978), the court held that even if the defendant judge had conspired with the prosecutors and witnesses to frame the plaintiff in a previous criminal action, the judge was entitled to immunity, for he had acted in his judicial capacity. Finally, in a case very similar to this one, the Southern District of Florida held that judges were immune even if they had conspired to have the plaintiff's previous civil court case dismissed. *Rothschild v. Ferris*, 577 F.Supp. 298 (S.D.Fla.1983) (judges immune even if induced by bias to conspire to have plaintiff's case dismissed and deny him access to the court). *See also Ammons v. Baldwin*, 705 F.2d 1445 (5th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 999, 79 L.Ed.2d 232 (1984) (judge immune for inducing a citizen to swear out a warrant to arrest the plaintiff); *Keating v. Martin*, 638 F.2d 1121 (8th Cir.1980) (judge immune even if met *ex parte* with prosecutor to arrange for denial of admission of some of plaintiff's evidence); *Birch v. Mazender*, 678 F.2d 754

(8th Cir.1982) (judge immune even if directed appointed counsel for indigent defendant to enter a guilty plea against defendant's wishes).

In light of the foregoing, the court concludes that plaintiff's complaint in this case does not set out facts from which this court could conclude that the defendant judges are not immune. Even construing the complaint entirely in plaintiff's favor, the complaint alleges that the judges conspired to force the dismissal of plaintiff's case by inducing his attorneys to resign; and then denied him due process by being biased in their rulings in the cases. No personal motivation is alleged; under the standard set out by the Supreme Court in *Stump v. Sparkman,* and the other numerous cases cited above, the court concludes that to the extent the complaint attempts to assert a claim against federal judges, in any manner, and in any count, the judges are entitled to immunity and the complaint is frivolous.

The other basis of federal jurisdiction in this complaint is plaintiff's antitrust claim. It need not detain this court for long. The complaint alleges that the effect of the alleged conspiracy on the part of these 40 defendants has been one of two: either (1) plaintiff has been prevented from acting as an attorney, giving legal advice or representation, due to the existence of state-authorized restraints on the practice of law; or (2) the defendants' concerted refusal to take Patterson's case has deprived him of legal advice and representation, in violation of the Constitution. Neither allegation states a claim for relief under Section 1 of the Sherman Act, and although the plaintiff alleges that Section 2 of the Sherman Act, and the Clayton Act, are bases of jurisdiction in this case, no attempt is made in the complaint to state a claim under those provisions.

■ With respect to the allegation that the plaintiff has been prevented from acting as an attorney, that claim is foreclosed by recent Supreme Court precedent. In *Hoover v. Ronwin,* 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984), the Court held that under the "state action" exception to antitrust liability, states and state bar associations are absolutely immune from antitrust liability for predicating admission to the practice of law · upon satisfaction of certain criteria. The plaintiff in this case does not allege he meets those criteria as they are applied in Georgia, and therefore under the precedent of *Hoover,* there can be no antitrust liability for the mere existence of those criteria. *See also Foley v. Alabama State Bar Association,* 648 F.2d 355 (5th Cir.1981). Because the actions of the state in this case clearly fall within the valid state action exception from antitrust liability, no antitrust liability of any type, as to any defendant, may be predicated upon this prong of plaintiff's complaint. *See Feminist Women's Health Center v. Mohammad,* 586 F.2d 530 (5th Cir.1978), *rehearing denied,* 591 F.2d 1343, *cert. denied,* 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979). Therefore, to the extent that this complaint attempts to predicate antitrust liability as to any defendant on the fact that this plaintiff is not permitted to practice law for other people, the complaint fails to state a claim on which relief can be granted and must be dismissed as frivolous.

■ Plaintiff's other contention, that he could not find anyone willing to undertake to represent him in his lawsuits, also does not state a claim for relief under the antitrust laws. First, the court would note that there is no constitutional right to counsel in a civil case. *See* United States Constitution, Amendment 6. With respect to the antitrust element, this complaint does not even allege that there is any kind of "anti-competitive" effect achieved because these defendants would not take plaintiff's case; or because they conspired so that no lawyer would take his case. The court concludes that plaintiff does not have standing to bring an antitrust action against these defendants on the facts as alleged in the complaint.

To have standing to bring an antitrust action a plaintiff must have suffered antitrust injury, which is injury of the type

the antitrust laws were intended to prevent and which flows from that which makes a defendant's acts unlawful. *The injury must reflect the anti-competitive effect* of either the violation of antitrust law or of the anti-competitive acts made possible by the violation, and it should be the type of loss which a violation of antitrust law would be likely to cause. *Brunswick Corp. vs. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477 [97 S.Ct. 690, 50 L.Ed.2d 701] (1977). To have standing a person must be one against whom antitcompetitive activity is directed, and not one who has merely suffered indirect, secondary, or remote injury. *Jeffrey vs. Southwestern Bell,* 518 F.2d 1129 (5th Cir.1975). Incidental or consequential injury or injury remotely caused by an antitrust violation does not give a plaintiff standing to complain that he has been injured by reason of anything forbidden in the antitrust laws. *Id.*

*Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 710–11 (11th Cir.1984) (emphasis added). In the present case, the plaintiff does not allege any injury to competition. *See also Johnston v. Meyer,* 413 F.Supp. 490 (N.D.Ind.1976) (allegation that no attorney would take case fails to state a claim under Sherman Act).

Even if the plaintiff's loss of four lawsuits could be linked to the fact that he could not find an attorney to represent him in those cases, the plaintiff has not made out a claim for violation of the antitrust laws. In order for conduct to constitute an antitrust violation,

> ... the anti-competitive conduct must have an effect greater than its effect on the plaintiff's business.... The conduct must have an adverse impact on the competitive conditions in general *as they exist within the field of commerce in which the plaintiff is engaged.*

*Gough v. Rossmoor Corp.,* 585 F.2d 381, 386 (9th Cir.), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1978) (emphasis added). In the present case, the complaint does not allege that the fact that plaintiff could not find an attorney to represent him

has in any manner had an anti-competitive effect upon conditions in the field of commerce in which this plaintiff is engaged, which is operation of an independent theatre. For these foregoing reasons, the court concludes that this complaint is frivolous to the extent that it attempts to state a claim for violation of the antitrust laws.

From the foregoing discussion, it is readily apparent that Counts III, IV, VI, and VII of this complaint are frivolous, and are therefore DISMISSED. With respect to Count V of the complaint, the "obstruction of justice" count, the court concludes that all the claims attempted to be asserted therein are barred by the doctrines of collateral estoppel and *res judicata.* The arguments which plaintiff re-hashes now were arguments he raised in some or all of the other four lawsuits he has filed in this court. Judgments adverse to the plaintiff in those lawsuits have either been appealed, are on appeal, or the appeal time has not yet run. Plaintiff's arguments respecting the use of perjured testimony, bias on the part of the judges, inability to conduct adequate discovery, and the like, are all arguments which either could have been or were raised during the course of those lawsuits. Therefore, the court concludes that, having taken judicial notice of its records, the claims contained in Count V of the complaint are also frivolous, since they are barred by reason of collateral estoppel and *res judicata.*

That leaves only Counts I and II of this complaint, in which plaintiff alleges breaches of contract by defendants who are not diverse from him, and additionally remaining is part of Count VI of the complaint, to the extent that the four attorneys named therein are not entitled to the judicial immunity of the three judges named therein. However, the four attorneys named in Count VI are of the same citizenship as the plaintiff, and therefore that count is also not diverse.

The court having determined that the alleged bases of federal jurisdiction in this complaint are without merit, since the counts on which they are based are friv-

olous, and given the fact that the remaining counts of the complaint are state law claims against non-diverse defendants, over which this court declines to exercise jurisdiction, this *pro se* action is hereby DISMISSED on the grounds of frivolity pursuant to 28 U.S.C. § 1915(d).