ROBERT MOERS, Plaintiff, *v.* CHARLES E. GILBERT and GILBERT MANUFACTURING CO., INC., Defendants.*

Supreme Court, New York County, January 15, 1941.

*Charles S. Rosenschein* [*Robert Moers* and *William M. Kurtz* of counsel], for the plaintiff.

*I. Gainsburg* [*Milton Levitan, Emanuel Baetich* and *Edgar T. Schleider* of counsel], for the defendants.

EDER, J. Motion by defendants to vacate and set aside referee's report, the judgment entered thereon, and for a new trial of the issues.

By an order of this court dated March 21, 1940, a referee was appointed to hear and determine the issues of law and fact in this action; a trial was had and concluded. On July ninth the referee made his report, which was filed in the clerk's office on the following day; judgment thereon was entered on July twenty-second. on July twenty-fourth defendants served and filed notice of appeal. the record on appeal was settled by the referee, after passing upon various proposed amendments; it was filed in the Appellate Division on November twentieth. It is alleged that the appellants' points were due December tenth, but that no points have been served or filed by them, and that the time to file them has not been extended.

The motion herein is founded on the contention that the referee was disqualified to act in that he was interested in the outcome of this action and had become a party to the litigation. It is

alleged in the moving papers that " Before the referee rendered his decision, it was agreed between plaintiff's counsel and defendants' then attorney * * * that the referee's compensation was to be fixed in the sum of $2,000. This agreement was reduced to writing by stipulation dated July 12, 1940." The judgment, which was settled and approved by the referee, as to form and substance, among other things, adjudged that the plaintiff recover of the defendants, jointly and severally, " the sum of $2,000.00, referee's fees * * *." It appears from the papers on this motion that there was some controversy before the referee as to certain amendments proposed by the plaintiff to the proposed case on appeal which were disallowed and that the plaintiff, considering himself aggrieved by the decision of the referee, proposed to appeal therefrom, but the parties, desiring to arrange the matter amicably, thereupon, by a stipulation dated October tenth, adjusted the matter to their own satisfaction.

The defendants contend that the judgment which was entered in the plaintiff's favor, providing, as it does, that the plaintiff recover of the defendants the sum of $2,000, referee's fees, made the plaintiff the referee's agent to collect the fees, inasmuch as the referee had not been paid at the time of its entry; that as a consequence thereof the referee was, as stated, interested in the outcome of the action, had become a party to the litigation and was disqualified from acting on the settlement of the amendments to the proposed case on appeal and that his actions thereon were void and a nullity as a matter of law; that the defendants have been prejudiced in that they had lost their constitutional right to have an impartial arbiter settle the record on appeal and were " otherwise prejudiced," though in what manner is not disclosed.

In opposition, these allegations of the defendants are unequivocally and emphatically denied by the plaintiff and the referee. The referee avers that he made his report on July ninth and caused it to be filed on the following day. With respect to the subject of his compensation, he states: " Up to that time nothing whatever had been said with respect to my compensation or the amount thereof, either by me to any of the parties, attorneys or other persons in this action, or to me by any of the parties, attorneys or other persons in this action." He alleges that after his report was filed he prepared and rendered a bill in the sum of $2,000 representing what he regarded as a fair and reasonable compensation; that he, himself, fixed the amount; that thereafter he was informed by letter from plaintiff's attorney that the parties had agreed in writing on his compensation at the said sum specified by him. In specific answer to the mentioned allegation in the moving

papers that before the referee rendered his decision that counsel for the respective parties agreed that his compensation was to be fixed in the sum of $2,000, the referee states: " Neither I nor any of the attorneys, parties or other persons in this case mentioned, in my presence, the sum of $2,000 or any other sum as my compensation, until after the report had been made and filed. No one received information from me as to the amount which I considered was a fair and reasonable fee until I mailed the aforesaid bill. I never heard of any agreement as to my compensation between the attorneys until I received counsel's letter of July 17, 1940 (Exhibit N)."

In further specific answer to the purported conversation between plaintiff and affiant Baetich, regarding the settlement of the record on appeal, the referee states: " In the said affidavit there is also the following statement: ' * * * the plaintiff, Robert Moers, told me, in substance, that he would hasten the settlement of the record and to do so, he himself would take the original record down to the referee and have him sign it as he had promised the referee that he would see to it that the referee would be paid as quickly as possible.' Plaintiff, Robert Moers, did not promise me that he would see to it that I would be paid as quickly as possible. Neither he nor any one in his behalf ever made any promise to me with respect to the payment of my fee. Except as has been set forth in this affidavit, I never discussed the matter of my compensation with any of the parties herein or with any one representing a party. I never made any arrangement with the plaintiff or any one representing the plaintiff, with respect to the amount of my compensation or the payment thereof, nor did the plaintiff or any one representing him ever speak to me on that subject."

It is of particular importance to note that although it is alleged in the moving affidavit of the affiant Baetich that this alleged agreement between the attorneys as to the referee's compensation was purportedly made before he rendered his decision and filed his report, it is not alleged by this affiant or by any one else that the referee was a party to it, in any manner, or had any knowledge whatever concerning it. Baetich's affidavit in this respect is pure hearsay as far as any attempt is made to utilize it as against the referee and it is similarly hearsay as to the purported conversation between this affiant and plaintiff as to anything plaintiff allegedly told him with respect to any promise of payment as quickly as possible of the referee's compensation; certain it is that any such statements made by plaintiff to Baetich, if they were made, are not binding on the referee and have no evidentiary value whatever. And it is of especial significance to note, in the affidavit

of Mr. Glynn, defendants' then attorney, and submitted in behalf of the defendants on this motion, the following unequivocal statement, viz.: " It is true that as far as the referee was concerned, I had no conversations with him concerning the question of his fees at any time."

In view of this admission it would seem rather superfluous to determine any issue of veracity. Granting that the attorneys for the respective parties did have conversations concerning the referee's fees prior to the rendition of his report and that they did agree between themselves upon the amount of his compensation and that the stipulation of July twelfth is the embodiment of their agreement, it being undisputed that the referee knew nothing whatever thereof and that he was in no way a party thereto, I am unable to perceive by or upon what possible hypothesis it can be said that he became or is bound or affected by it. I have no hesitancy whatever in resolving, and I do resolve in favor of the referee every disputed issue of fact. If further substantiation of the plaintiff's contention were necessary it is found in the fact that for a period of five months from the making and filing of the referee's report, neither the regularity nor the validity of the proceedings was ever questioned, nor the propriety nor legality of the acts of the referee ever assailed, nor the invalidity of the judgment entered ever asserted, in any manner or form.

I shall now take up the legal questions involved. I am in full accord with the dogmatic statement in *McCormick* v. *Walker* (158 App. Div. 54) that " the State is bound to furnish to every litigant not only an impartial judge, but one who has not, by any act of his, justified a doubt of his impartiality." And I also unreservedly subscribe to the declaration in *Leonard* v. *Mulry* (93 N. Y. 392, 396) that " No man   *   *   *   can be a judge in his own cause and   *   *   *   he cannot sit as such in a cause or matter in which he is interested." This was the rule at common law and incorporated as a part of our statute law, *i. e.*, section 15 of the Judiciary Law, which, so far as here pertinent, provides: " A judge shall not sit as such in, or take any part in the decision of, a cause or matter to which he is a party   *   *   *   or in which he is interested." It is perforce this provision that defendants claim the referee was disqualified and that it resulted in rendering the proceedings and his acts *coram non judice.*

Defendants rely strongly on the *Leonard* and *McCormick* cases (*supra*) as conclusively establishing their right to the relief sought by this motion, but I do not think they have any proper application to the facts in the instant case, and indeed, predicated upon the facts in the case at bar, are authorities against the defendants'

contentions. They are inapplicable, as will be presently shown, because the factual situation in those cases is wholly unlike that in the case at bar.

With respect to section 15 of the Judiciary Law, it is held that the provisions of this section apply to a referee (*McCormick* and *Leonard* cases, *supra*), and that where such disqualification exists the effect thereof is to deprive the judge of jurisdiction (*Wilcox* v. *Royal Arcanum*, 210 N. Y. 370, affg. 151 App. Div. 297); that the whole proceeding before him is utterly void (*Oakley* v. *Aspinwall*, 3 N. Y. 547), and such disqualification renders absolutely void any judgment rendered (*Elmira Realty Co.* v. *Gibson*, 103 App. Div. 140); it is also held that this section contains no provision for a waiver of the statutory disqualifications (*People* v. *Thayer*, 61 Misc. 573), and that if the disqualification exists, not even the consent of the parties can overcome it (*Queens-Nassau Mortgage Co.* v. *Graham*, 157 App. Div. 489). It becomes necessary, therefore, to determine if the referee, upon the record here disclosed, comes or has brought himself within the mentioned disqualifications, *i. e.*, (1) interested in the outcome of this action; (2) has become a party to the litigation.

*Leonard* v. *Mulry* (*supra*) was a case where the plaintiff, as a consideration for the delivery of the referee's report, executed an agreement giving to the referee a first lien for his fees upon the judgment and claim of the plaintiff, the same to be paid out of the first moneys collected upon said judgment or any subsequent judgment that might be recovered, and both plaintiff and the referee knew at the time that the defendant intended to appeal. The court said: " Clearly the referee had acquired an interest so direct that an unsuccessful appeal would result in his pecuniary gain; and it is immaterial whether the functions of his office, in the settlement of the case or exceptions, are characterized as judicial or ministerial. In performing them he must act as referee, and for that he was disqualified."

In *McCormick* v. *Walker* (*supra*) the referee made his report in favor of the plaintiff and so notified him and accepted from the plaintiff an assignment of the judgment to be entered as security for a part of his fees, and the referee was held to be thereby disqualified from passing upon the defendant's requests to find, subsequently submitted. The theory and basis of the rulings in those cases are that it is improper for a referee to demand or receive fees prior to the completion of his decision, viz., in advance of the time when he is entitled to receive them. This is illustrated by *Ament* v. *Schubert Piano Co.* (172 App. Div. 423), where the court said: " It is well settled that under ordinary circumstances a referee's

right to his fees does not accrue until he has completed the reference and filed or delivered his report."

In *Leonard* v. *Mulry* (*supra*, p. 395) the court pointed out that at the time of the arrangement between the prevailing party and the referee, the duties of the latter had not ended nor were the rights of the litigants finally determined. The defeated party intended to appeal from the decision and of this intention his adversary and the referee were both notified before the execution of the agreement between them. In that connection the court said: " The defeated party intended to appeal from the decision, and of this intention his adversary and the referee were both notified before the execution of the agreement between them. The possible success of that appeal was in their minds, and so the agreement establishes a lien in favor of the referee, not only upon the judgment to follow his report, but upon the cause of action itself, and provides for the payment of his fees ' out of the first moneys collected from defendants upon said judgment or any subsequent judgment that may be recovered ' in the action."

In *McCormick* v. *Walker* (*supra*) the referee took an assignment under circumstances quite similar to those in *Leonard* v. *Mulry* and was held to have similarly disqualified himself. These pivotal considerations are not present in the case at bar and there is no counterpart of facts. The referee here did none of the acts mentioned in the *Leonard* and *McCormick* cases; he had no relations or discussion whatever with any one concerning his compensation, in any shape or form, either before or after his report was filed; he made a charge for his services, in a sum of his own choosing, after he had fully completed the reference and filed his report and his fees had accrued, as he had the legal right to do. (*Ament* v. *Schubert Piano Co., supra.*) None of the acts committed by the referee and condemned in those cases are present here; the basal grounds found to exist in those cases, and upon which the decisions turned and rested, are non-extant in the instant case; hence those cases are without application or effect and are readily and clearly distinguishable.

The claim that the provision in the judgment that plaintiff recover of defendants the sum of $2,000, referee's fees, "made the plaintiff the referee's agent to collect the fees " and that this disqualified him for interest in the cause and made him a party thereto, is devoid of legal stability. Defendants' counsel cites no case in support of this contention nor has my independent research unearthed any. The defendants finally acknowledge that no charge is made that the referee acted dishonestly and thereupon reduce their contention to the limitation that even though

there was no actual assignment of any part of the judgment, the interest created by the plaintiff, as a result of the entry of the judgment in the manner and form set forth in the moving papers is sufficient, under the *Leonard* and *McCormick* cases (*supra*) to disqualify the referee. I do not share this view.

It is apparent that behind the enactment of section 15 of the Judiciary Law, was the purpose of maintaining the purity of the administration of justice, and in keeping with this laudable objective I fully indorse the view that the report of a referee may and should be set aside upon even slight proof of improper dealings between him and the successful side, provided such dealings are shown to have had a tendency, no matter how remote, to influence the action of such referee in favor of such party. But the case at bar is wholly barren of any of the practices referred to and condemned in the cited cases and the record before me abundantly establishes that all the proceedings before the referee were fully and entirely regular and valid.

The motion is, in all respects, denied.