In re **JOINT EASTERN AND SOUTHERN DISTRICTS ASBESTOS LITIGATION.**

**United States District Court Eastern District of New York and Southern District of New York.**

In re **NEW YORK CITY ASBESTOS LITIGATION.**

**New York State Supreme Court: All Counties Within the City of New York.**

**This Document Relates to: All Brooklyn Navy Yard Cases.**

**Index No. 40000.**

United States District Court, E. and S.D. New York.

New York State Supreme Court, City of New York.

May 16, 1990.

McCarter & English by Andrew T. Berry, New York City, Geoffrey Hazard (of counsel and on the memorandum), Yale Law School, New Haven, Conn., for defendant Owens–Illinois, Inc.

Christy & Viener, by Franklin B. Velie, New York City, for defendant Owens–Corning Fiberglas (opposing motion).

Greitzer & Locks by Eugene Locks, Philadelphia, Pa., for plaintiffs.

WEINSTEIN, District Judge, and HELEN E. FREEDMAN, Supreme Court Justice.

On January 30, 1990 Kenneth R. Feinberg, Esq. was appointed a federal Special Master and a state Referee by joint order of the United States District Court for the Eastern District of New York and the Supreme Court of the State of New York, respectively. *See In re Joint Eastern and Southern Districts Asbestos Litigation; In re New York City Asbestos Litigation,* 129 F.R.D. 434 (E.D.N.Y. & N.Y.Sup.Ct. 1990). Mr. Feinberg was to act as a settlement master-referee, mediating between the parties to avoid the necessity of extended trials in cases involving asbestos exposure at the Brooklyn Navy Yard. He was directed to attempt to settle the cases in four months, by June 1, 1990.

Owens–Illinois, Inc., one of the defendants in these cases, offered no objection during discussions with the court. Nevertheless, Owens–Illinois sought on April 24, 1990 by motion returnable May 15 to disqualify Mr. Feinberg. Its ground was that some years ago he and his law firm, Kaye, Scholer, Fierman, Hays & Handler, had acted on its behalf and that of other asbestos manufacturers in connection with public education and legislative efforts aimed at promoting alternative compensation systems to mass tort litigation.

The motion must be denied because: (1) the special position of a mediator renders inappropriate disqualification under the circumstances alleged by the moving party; (2) it has already been denied in connection with consolidated asbestos litigation pending in Maryland in which Mr. Feinberg was appointed as mediator; and (3) the motion is untimely.

## I. FACTS

Kenneth R. Feinberg, Esq. is a nationally recognized mediator of great skill whose services have been frequently utilized by private litigants and by courts. He has also taken a leading role in legislative, bar association and academic circles in connection with the development of important alternative dispute resolution (ADR) innovations. In addition to his duties as mediator in the Brooklyn Navy Yard cases, Mr. Feinberg was appointed to a similar position last year by the Baltimore Circuit Court for Baltimore City and charged with settling some 9000 consolidated asbestos personal injury cases in the state of Maryland. That litigation is currently pending. Mr. Feinberg, with the consent of the Mary-

land, New York and federal courts, continues to act simultaneously as a settlement master in both the Maryland and New York litigations.

From 1980 to 1983 Mr. Feinberg represented a group of asbestos manufacturers known as the Asbestos Compensation Coalition. The Coalition was formed to develop or respond to federal legislative proposals and to other governmental activities relating to alternative compensation systems for asbestos claimants. During the course of his representation of the Coalition Mr. Feinberg drafted legislative proposals for alternative compensation systems and worked with congressional personnel and representatives of other companies. Owens–Illinois, the moving party in the instant case, was not a member of the Coalition, although a number of the other defendants in the instant case—none of whom have joined in the motion to disqualify—were members.

In early 1983 the Coalition disbanded and in its place a number of asbestos companies, including Owens–Illinois, formed the Committee for Equitable Compensation, an organization with purposes similar to that of the Coalition. Mr. Feinberg personally represented the Committee through the end of 1983. Neither he nor his firm represented or advised the Committee or any of its individual members in the defense or settlement of asbestos claims brought under existing laws. Mr. Feinberg worked with Congress on behalf of the Committee looking towards federal legislation establishing a no-fault administrative compensation program for asbestos claimants to which the United States Government would contribute. He and his firm also undertook public education projects on the Committee's behalf and reacted to proposals for a uniform national product liability law. Although a number of the other defendants in the instant litigation were members of the Committee, none have joined Owens–Illinois' motion to disqualify.

Although his personal involvement had ceased by early 1984, Mr. Feinberg's law firm and in particular, his colleague, Lawrence Novey, continued to represent the Committee until mid–1987.

In January 1990, some five months into Mr. Feinberg's tenure as settlement master in the Maryland asbestos litigation, Owens–Illinois moved to disqualify him in that litigation. The motion was denied by Judge Marshall A. Levin, who was supervising the Maryland asbestos litigation, in February 1990. *See In re Asbestos Personal Injury Litigation,* AMOF No. 87048500, (Balt. City Cir.Ct. Feb. 14, 1990) (Letter–Order) (attached as appendix A). The Owens–Illinois appeal was dismissed in April 1990 by the Maryland Court of Special Appeals. *See Owens–Illinois, Inc. v. Kenneth R. Feinberg,* PHC No. 93 (Ct. Special App. Apr. 19, 1990) (attached as appendix B). In April 1990, after Mr. Feinberg was moving towards a final critical phase of his mediation efforts in the Brooklyn Navy Yard cases, Owens–Illinois moved to disqualify him in the instant litigation. The Owens–Illinois papers are almost verbatim copies of its papers in the Maryland litigation.

## II. THE IMPORTANCE OF ALTERNATIVE DISPUTE RESOLUTION ADVANCES AND PROPOSALS

Mediation in mass tort litigation such as the asbestos cases is of vital importance to the public, interested parties, the courts and the legal profession. The cost, both in specific outlays of the parties and the burdens these complex cases place on the courts by preventing or substantially delaying adjudication in criminal and other civil matters, as well as in high transactional costs that prevent claimants from obtaining reasonable awards promptly, warrants every effort to avoid expensive and unnecessary litigation. Without such mediation efforts by judges, magistrates and others our calendar system would break down. Many litigants would simply find the courthouse door closed.

The mediator—whether judge or special master—must work independently with each of the parties. It must be assumed that the relationship between the mediator and each of the parties and their counsel

will be open, candid and forthcoming. *See, e.g.,* Henderson, *Settlement Masters,* in *Center for Public Resources Legal Program, ADR and the Courts: A Manual for Judges and Lawyers* 233 (E. Fine ed. 1987) (district judge's views on mediation process). The settlement master must hold *ex parte* "frank, confidential discussion(s)" with all parties so that each privately can inform the master of the strengths and weaknesses of its case and hear the master's evaluation of the case. *Id.* at 235–36. Neither the judge nor opposing counsel is privy to these individual discussions. *Id.* The parties engaged in a mediated settlement process recognize that they must, if the process is to work, fully disclose to the mediator their needs and tactics—not only those that have been publicly revealed, but also their private views and internal arrangements. Information revealed to the mediator should include—absent a confidential communication privilege—relationships to insurers, overall strategy, corporate politics and the like.

Much the same position is taken when the court itself acts as a mediator in the large number of cases in which a judge or a magistrate works closely with the parties to assist them in settling pending cases. It is standard practice for the presiding judge or magistrate to meet separately with each of the parties for a candid discussion of strategy and the needs of the party. Sometimes these sessions will be attended by high officials of one of the parties in addition to the attorneys. Often insurance counsel will attend so that the judge can appreciate fully the difficulties faced and positions taken by each party and make helpful suggestions.

Thus the mediator, in the form of judge, magistrate, special master, referee or other privately appointed person, must be fully apprised if he or she is to take advantage of the special circumstances of each case. The role of the mediator is often that of the honest broker who must suggest a solution giving advantage to both sides and minimizing the price that each must pay. *See generally* W. Brazil, *Effective Approaches to Settlement* (1988); D. Provine, *Settlement Strategies for Federal Judges* (1986);

R. Fisher and W. Vry, *Getting to Yes* (1981); H. Will, R. Merhige, Jr. and A. Rubin, *The Role of the Judge in the Settlement Process* (1977); F. Lacey, *The Judge's Role in the Settlement of Civil Suits* (1977); Lynch and Levine, *The Settlement of Federal District Court Cases: A Judicial Perspective,* 67 Or.L.Rev. 239 (1988); Galanter, *The Emergence of the Judge as a Mediator in Civil Cases,* 69 Judicature 256 (1986); Schuck, *The Role of Judges in Settling Complex Cases: The Agent Orange Example,* 53 U.Chi.L.Rev. 337 (1986). Examples of this technique are found in general litigation, mass torts, labor and elsewhere. *See, e.g.,* Center for Public Resources Legal Program, *ADR and the Courts: A Manual for Judges and Lawyers* 11, 207–255 (E. Fine ed. 1987); A. Talbot, *Settling Things* (1983) (evaluating mediation of environmental disputes); Rowe, *Study on Paths to a "Better Way": Litigation, Alternatives, and Accommodation,* 89 Duke L.J. 824 (1989). A considerable amount of teaching in the law schools is now devoted to mediation and alternative dispute resolution. *See, e.g.,* N. Rogers and C. McEwen, *Mediation: Law, Policy, Practice* (1989) (treatise); L. Riskin and J. Westbrook, *Dispute Resolution and Lawyers* (1987) (casebook); L. Kanowitz, *Cases and Materials on ADR* (1986) (casebook); Journal of Dispute Resolution (published since 1984 by the University of Missouri at Columbia School of Law).

### III.  ETHICAL OBLIGATIONS OF MEDIATOR

#### A.  Law

■ In general a special master or referee should be considered a judge for purposes of judicial ethics rules. *See* Code of Judicial Conduct For United States Judges, 69 F.R.D. 273, 286 (1975) (approved by Judicial Conference of the United States, April 1973 and amended) (Code of Judicial Conduct applicable to special masters); Standards Relating to Judicial Discipline and Disability Retirement, Rule 1.2, Comment (same). *Accord Belfiore v. New*

*York Times Co.*, 826 F.2d 177, 185 (2d Cir.1987) (Code of Judicial Conduct For United States Judges applies to special masters), *cert. denied*, 484 U.S. 1067, 108 S.Ct. 1030, 98 L.Ed.2d 994 (1988). This conclusion is not undermined by the fact that the federal and state statutes governing the recusal of judges, justices or magistrates, *see* 28 U.S.C. § 455 and N.Y. Jud.Law § 14, do not by their terms cover special masters or referees.

The Court of Appeals for the Second Circuit appears not to have explicitly addressed the question of whether the same standard governing disqualification of a judge should apply to special masters. *See Rios v. Enterprise Ass'n of Steamfitters Local 638*, 860 F.2d 1168, 1173–74 (2d Cir. 1988) (observing that federal case law is ambivalent regarding whether special masters should be held to same standards of impartiality as judges). Other federal courts have required special masters to meet the same ethical standards as judges. *See, e.g., Jenkins v. Sterlacci*, 849 F.2d 627, 630 n. 1, 631–32 (D.C.Cir.1988) ("[I]nsofar as special masters perform duties functionally equivalent to those performed by a judge, they must be held to the same standards as judges for purposes of disqualification."); *United States v. Conservation Chemical Co.*, 106 F.R.D. 210, 234 (W.D.Mo.1985) (same). *But see Morgan v. Kerrigan*, 530 F.2d 401, 426 (1st Cir.) (applying lower standard of impartiality to masters than to judges), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386 (1976).

Section 4301 of the New York Civil Practice Law and Rules provides that a referee appointed to determine an issue or perform an act "shall have all of the powers of a court in performing a like function." Impliedly, then, the standards of judicial conduct applicable to judges also apply to a referee. *See, e.g., Moers v. Gilbert*, 175 Misc. 733, 25 N.Y.S.2d 114, 118 (Sup.Ct.), *aff'd*, 261 A.D. 957, 27 N.Y.S.2d 425 (1st Dep't 1941) (holding that the provisions of New York judicial disqualification statute apply to court-appointed referees).

For purposes of deciding this motion we accept the movant's proposition that special masters and referees should be held to the same standards as judges. We see no need to distinguish between state or federal appointees. Both should be held to equally high standards. Both should be above suspicion. Since the use of special masters for purposes of settlement is more prevalent in the federal courts, the statutory and case precedents are primarily federal.

Under federal law, a judge may be disqualified in two situations that are relevant to the instant motion: 1) where "impartiality might reasonably be questioned," 28 U.S.C. § 455(a), and 2) where there is "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* § 455(b)(1). Section 455(a) "sets out an objective standard for recusal, creating the so-called 'appearance of justice' rule." *De-Luca v. Long Island Lighting Co.*, 862 F.2d 427, 428 (2d Cir.1988) (citation omitted).

The federal test of impartiality "is what a reasonable person, knowing and understanding all the facts and circumstances, would believe." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988). As the legislative history of the 1974 amendments to section 455 emphasizes when explaining subsection (a):

> [d]isqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial.

H.R.Rep. No. 1453, 93d Cong., 2d Sess. 4–5, *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6354–55.

With regard to § 455(b)(1), any "alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). *Accord People v. Moreno*, 70 N.Y.2d 403, 407, 521 N.Y.S.2d 663, 666, 516

N.E.2d 200, 202–03 (1987) (holding New York State judges to same disqualification standard) (citing *Grinnell*, 384 U.S. at 583, 86 S.Ct. at 1710).

■ The sole statutory authority for disqualification of a judge under New York State law is Section 14 of the Judiciary Law. That provision states that a judge may not take part in a proceeding involving either the judge or the judge's relatives up to the sixth degree of consanguinity or in a proceeding in which the judge or relatives have a direct interest in the litigation. The New York Court of Appeals has held that "absent a legal disqualification under Judiciary Law § 14, a Trial Judge is the sole arbiter of recusal." *People v. Moreno*, 70 N.Y.2d 403, 405, 521 N.Y.S.2d 663, 665, 516 N.E.2d 200, 201 (1987).

There are also rules governing judicial conduct which are made binding upon New York State Judges by the Rules of the Chief Administrator of the Courts. *See* 22 N.Y.C.R.R. § 100.1 *et seq.* These rules follow the language of the Code of Judicial Conduct promulgated by the American Bar Association, adopted by the New York State Bar Association and codified in Book 29 of McKinney's Consolidated Laws of New York. Under the heading "avoiding impropriety and the appearance of impropriety," Rule 100.2 of the New York Code of Rules and Regulations states that a judge should "conduct himself or herself at all times in a manner that promotes public confidence in the integrity and impartiality of the Judiciary."

■ In defining avoidance of the appearance of impropriety, Rule 100.3 states a judge should disqualify himself or herself "in a proceeding in which his or her impartiality might reasonably be questioned" including situations in which "the judge served as a lawyer in the matter in controversy...." The determination of impropriety in any given situation, however, remains within the discretion of the judge. *See People v. Moreno*, 70 N.Y.2d 403, 407, 521 N.Y.S.2d 663, 666, 516 N.E.2d 200, 202–03 (1987) (absent statutory disqualification, standard of review is abuse of discretion); *Johnson v. Hornblass*, 93 A.D.2d 732, 461 N.Y.S.2d 277, 279 (1st Dep't 1983).

■ Owens–Illinois raises an additional issue concerning the appointment of a referee under New York law, claiming that consent of the parties is a prerequisite. While consent is necessary for a referee appointed to hear and determine a controversy pursuant to CPLR § 4317(a), it is not necessary for an appointment under CPLR § 4311 or CPLR § 4320(a). The order appointing Mr. Feinberg in no way authorizes him to hear and determine controversies. Rather his position is to "assist the parties and the courts in promptly settling these cases subject to the further order of the courts." *In re Joint Eastern and Southern Districts Asbestos Litigation; In re New York City Asbestos Litigation*, 129 F.R.D. 434, 435 (E.D.N.Y. & N.Y.Sup.Ct. 1990).

■ This is the same role that Mr. Feinberg has played in Maryland. If the settlement process is not successful, all parties retain the right to a jury trial. Therefore, the limitations imposed by CPLR § 4317 are irrelevant.

■ The issue of whether a judge should be disqualified requires careful examination of the particular setting of the dispute to determine whether the charge could reasonably be construed as bringing into question the trier's impartiality. *See In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir.1988).

Examination of the context is particularly important in the case of mediators, where the courts have recognized that it is inevitable that special masters—like court-appointed experts, but unlike judges—will often be chosen from the ranks of practicing attorneys who themselves have prior expertise in the subject matter and prior association with experts in the field. *See Rios v. Enterprise Ass'n of Steamfitters Local 638*, 860 F.2d 1168, 1174–75 (2d Cir. 1988). *Cf. Scott v. Spanjer Bros., Inc.*, 298 F.2d 928, 931–32 (2d Cir.1962) (finding that medical expert appointed by court to assist court and jury need not be disqualified because he allegedly had a great deal

**742**

of experience as "plaintiff's doctor"). In light of this inevitability, the Court of Appeals for the Second Circuit has found as a "general 'rule that disqualification [of a special master] is a matter for the exercise of discretion by the district judge, unless actual bias has been demonstrated.'" *Rios v. Enterprise Ass'n of Steamfitters Local 638*, 860 F.2d 1168, 1174 (2d Cir.1988). *Cf. Lipton v. Lipton*, 128 Misc.2d 528, 489 N.Y.S.2d 994, 1000 (Sup.Ct.1985) ("[A] referee should be removed only for good and substantial reasons.")

As an officer of the court the special master remains bound to respect the confidentiality of and refrain from using to Owens–Illinois' disadvantage any information imparted to him under seal of confidentiality by that company in the course of his legislative or mediation efforts. *Cf.* Code of Professional Responsibility, N.Y. Jud.Law App., EC 4–5.

### B.  Facts and Conclusion

■ The gravamen of Owens–Illinois' complaint is that Mr. Feinberg, in the context of a prior attorney-client relationship during the early and mid–1980's, became privy to "highly sensitive" and candid internal information and that, as a result, his impartiality in the current case might reasonably be questioned. Mr. Feinberg must now possess, in less dated but presumably equally forthcoming form, confidential information of a similar nature as a result of his current mediation efforts in Maryland and New York. As already noted *supra* in Part I, Mr. Feinberg obtained the earlier information for purposes of general legislative representation, distinct from the representation or advising of Owens–Illinois in its defense of asbestos personal injury litigation. In his present role as a neutral mediator charged with assisting the parties in achieving a settlement and with pursuing the goals of the alternative dispute resolution process outlined by the courts, he is not an advocate for either Owens–Illinois, or for any other party whose interests may be inimical to those of Owens–Illinois.

Owens–Illinois has failed to make any showing that as a result of any alleged conflict of interest, it has or will be adversely affected. *See McLaughlin v. Union Oil Co. of California*, 869 F.2d 1039, 1047 (7th Cir.1989) ("Bias ... requires evidence that the [judicial] officer had it 'in' for the party for reasons unrelated to the officer's view of the law, erroneous as that view might be."). Under these circumstances it can not be said that it has demonstrated by any possible standard that Mr. Feinberg is biased against Owens–Illinois. *See, e.g., Rios v. Enterprise Ass'n of Steamfitters Local 638*, 860 F.2d 1168, 1174 (2d Cir.1988) (citation omitted). Here, as already pointed out by the Maryland court, it is clear from the record that no reasonable lawyer or member of the public who understood the nature of the mediator's role or the facts relied upon by the moving party could possibly question the impartiality of Mr. Feinberg.

### IV.  RES JUDICATA AND COLLATERAL ESTOPPEL

#### A.  Facts

The same issue of disqualification has already been fully adjudicated between the same parties in the Maryland asbestos litigation. *See In re Asbestos Personal Injury Litigation*, AMOF No. 87048500, (Balt. City Cir.Ct. Feb. 14, 1990) (Letter–Order denying Owens–Illinois' Motion to Disqualify Special Master Kenneth R. Feinberg, Esq.), *app. dismissed sub nom., Owens–Illinois, Inc. v. Kenneth R. Feinberg*, PHC No. 93 (Ct.Special App. Apr. 19, 1990).

During the course of the Maryland litigation Owens–Illinois raised objections to Mr. Feinberg's appointment as settlement master based on his prior representation of the Committee for Equitable Compensation on two occasions. Both times the objections were rejected. The first occurred in early September 1989 shortly after the presiding judge announced his intention to appoint Mr. Feinberg. At that time Owens–Illinois, together with at least one plaintiff firm, objected informally by letter and in a conference with the Judge. After "considering carefully" the claim, Judge Levin held that even if, as Owens–Illinois claimed, the information, strategies and positions ex-

plained to Mr. Feinberg and his law firm colleagues and the knowledge they gained while representing the Committee were relevant to Owens–Illinois' current position in the Maryland asbestos personal injury litigation, "that furnishes no basis for disqualifying Mr. Feinberg from acting as a Special Master for this court." Letter from Judge Levin to Messrs. B. Ford Davis and Harry S. Johnson (Sept. 19, 1989) (overruling Owens–Illinois' objections).

Judge Levin went on to observe that as a settlement master, Mr. Feinberg

> will not act or be in the position of hearing daily two sides of continuing controversies and then impartially deciding in favor of one side or the other. He will not act in a judicial role. Rather, he will be charged with devising and creating an ADR system within 90 days (plus a reasonable implementation time). The resultant procedures and techniques will be designed to dispose of the Baltimore City cases on a fair and efficient basis. This court feels that the vast majority of the cases can be disposed of in this manner. Any cases that cannot be so resolved will be disposed by either some consensual ADR method or ultimately by trial. Indeed, I feel that we shall know very soon whether such ADR system can work in Baltimore City, (and possibly in the rest of the State, for that matter). I feel confident that it will work.

> Therefore, I do not feel that [Owens–Illinois'] objection is well-founded. It is further significant to this court that even though there are many other members of [the Committee for Equitable Compensation] who are presently defendants in asbestos personal injury cases in Baltimore City, none save [Owens–Illinois] has objected even though the interest and objectives of such [Committee for Equitable Compensation] members is analytically the same as [Owens–Illinois'].

> While this court is aware that there are many other qualified persons who could act as impartial mediators, the appointment of a Special Master is not a mediation-specific appointment. It is rather an ADR-specific appointment. In this latter connection, Mr. Feinberg comes very well equipped.... He has already spent an enormous amount of time with counsel for plaintiffs and counsel for defendants and has specific plans for further activity. He works well with the court system.

*Id.*

In a December 1989 conference with all the Maryland parties Mr. Feinberg himself raised the fact that there had been an objection lodged against him. Neither Owens–Illinois nor any other party responded. On January 12, 1990, however, Owens–Illinois made a formal motion to disqualify Mr. Feinberg. The matter was subsequently briefed by both Owens–Illinois and Mr. Feinberg. On February 14, 1990 Judge Levin determined that the motion must be denied for two reasons: 1) on the basis of laches or, alternatively, 2) because the relief sought was both unnecessary and unwarranted since Owens–Illinois could adequately protect itself by simply withdrawing from the ADR process at any time. *In re Asbestos Personal Injury Litigation,* AMOF No. 87048500, (Balt. City Cir.Ct. Feb. 14, 1990) (Letter–Order). Judge Levin wrote:

> To ... derail an ADR process that has been in operation for more than five months seems to be pure overkill. Moreover, the fact that [Owens–Illinois] is the only member of [the Committee for Equitable Compensation] to object serves to fortify this Court's conclusion that disqualification would not be appropriate....

*Id.* Owens–Illinois' subsequent appeal to the Maryland Court of Special Appeals— which was opposed by several other asbestos manufacturers who had been Committee members and who are also defendants in the instant litigation—was dismissed, apparently on the ground of lack of finality. *Owens–Illinois, Inc. v. Kenneth R. Feinberg,* PHC No. 93 (Md.Ct. Special App. Apr. 5, 1990). *See also* Memorandum [of other defendants] in Support of Defendants' Motion to Dismiss, *In re Owens–Illinois, Inc.'s Motion to Disqualify Special Master Kenneth R. Feinberg for Alleged Conflict of Interest,* PHC No. 93 (Md.Ct.Special

App. Apr. 5, 1990) ("The ADR procedure is clearly voluntary, and nothing that the Special Master does is binding upon any of its participants. Owens–Illinois, Inc. is therefore free to participate or not in the ADR process as it chooses, and to accept or reject what the Special Master proposes. Thus, the Order neither determines nor concludes Owens–Illinois, Inc.'s rights in any sense.").

## B. Law

■■■ A state or federal judgment regarding a motion for disqualification of a judge must be accorded *res judicata* effect. *See, e.g., Tonti v. Petropoulous,* 656 F.2d 212, 216–17 (6th Cir.1981) (affirming district court ruling that doctrine of *res judicata* barred plaintiff's claim that he was denied a fair trial because of bias and prejudice of presiding probate judge where same claim had been fully and fairly litigated in and decided by state appellate courts); *Patterson v. Aiken,* 628 F.Supp. 1068, 1076 (N.D.Ga.1985) (claim that certain federal district judges were biased is barred by principles of *res judicata* and collateral estoppel because it was argument that could have been or was raised in prior lawsuits), *aff'd mem.,* 784 F.2d 403 (11th Cir.1986); *Collins v. Collins,* 597 F.Supp. 33, 36 n. 3 (N.D.Ga.1984) ("The fact that a court of competent jurisdiction has adjudicated the issue of whether [the judge] should have been recused from further involvement in the [lawsuit] would preclude relitigation of that issue in this court under the doctrine of *res judicata.*"). *Cf. Margoles v. Johns,* 798 F.2d 1069, 1072 n. 4 (7th Cir.1986) (citation omitted) (noting that failure to raise question of judge's impartiality in any post-judgment or appeal proceeding creates substantial questions of waiver and res judicata), *cert. denied,* 482 U.S. 905, 107 S.Ct. 2482, 96 L.Ed.2d 374 (1987).

## C. Conclusion

Mr. Feinberg's role as settlement master and referee in the instant litigation has been essentially identical to that which he pioneered in the consolidated Maryland cases. The New York courts appointed Mr. Feinberg in part on the basis of his Maryland experience and with the understanding that he would attempt to reproduce that methodology, if possible, in settling the Brooklyn Navy Yard litigation. Nor did this intention come as a surprise to the parties. At a mid-January conference with the parties, which was attended by Owens–Illinois, these courts explicitly discussed their desire to appoint a "Ken Feinberg-type ... settling master [to do] what he's doing in Maryland." At a subsequent conference in mid-February the courts again informed the parties, including counsel for Owens–Illinois, that "[t]he Maryland approach seems ... desirable." On neither occasion did Owens–Illinois raise any objection.

The only discernible difference in the Maryland and New York litigations is one of re-labelling the same argument rather than of raising a new and distinct theory. Whereas the Owens–Illinois Maryland motion relied solely on a claimed breach of attorney-client privilege, in the instant litigation it has added to the privilege argument a federal appearance-of-impropriety charge. This "new" argument is based on the applicability to special masters of the Code of Judicial Conduct for United States Judges. 69 F.R.D. 273 (1975).

Even assuming that the addition of the federal impropriety argument made inappropriate the application of the doctrine of *res judicata*—and we reject this argument—our decision to deny this motion would be unaffected. The collateral estoppel effect that must in any event be given the Maryland ruling on the privilege issue, when viewed in light of the specific nature of alternative dispute resolution generally and Mr. Feinberg's role specifically, as discussed *supra* in Parts II and III, and considered in combination with the laches and waiver problem, *see* discussion *infra* in Part V, require denial of the motion.

## V. LACHES AND WAIVER

### A. Law

■■■ Laches will rarely be applied in cases of claimed lack of impartiality. The reason is almost jurisdictional. It flows

not only from the natural desire of the courts to both be and appear impartial so that their judgments will be accepted by the parties and the public at large, but also from the fact that there is no applicable statute of limitations. Thus, even after a case has been fully decided, should information come to the attention of a litigant suggesting partiality, the matter can be raised anew. *See, e.g., Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988) (citation omitted) (in appropriate cases a judgment may be set aside under Fed.R. Civ.P. 60(b)(6) when a judge fails to recuse himself in violation of 28 U.S.C. § 455(a)); *Noli v. Commissioner of Internal Revenue,* 860 F.2d 1521, 1527 (9th Cir.1988) (citation omitted) (failure to move for recusal at trial level does not absolutely preclude raising on appeal issue of recusal under 28 U.S.C. § 455).

■ Nonetheless, where the alleged conflict of interest is known to a party at the outset of the proceeding, the party must make a motion for disqualification in a timely manner. *See Hardy v. United States,* 878 F.2d 94, 97 & n. 4 (2d Cir.1989) (§ 455(a) recusal claim, whether made in collateral attack or on direct appeal, must be asserted by a timely motion); *In re Int'l Business Machines Corp.,* 618 F.2d 923, 932 (2d Cir.1980) (finding timeliness requirement under 28 U.S.C. § 455 even in absence of explicit statutory provision). *See also Liljeberg,* 108 S.Ct. at 2206, 2207 (implying a timeliness requirement for motions for relief made under judicial disqualification statute, 28 U.S.C. § 455); *DeLuca v. Long Island Lighting Co., Inc.,* 862 F.2d 427, 429 (2d Cir.1988) (affirming, in part because motion was not made in timely fashion, district court's denial of a Rule 60(b) motion based on judge's failure to recuse himself); *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1472 (11th Cir.1986) (motion to disqualify will be barred as untimely where party seeking to raise recusal issue knew all the facts supporting recusal well before judicial proceeding took place), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987); *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v.*

*Homestake Mining Co.,* 722 F.2d 1407, 1414 (8th Cir.1983) (same) (*cited approvingly in DeLuca,* 862 F.2d at 429)); *Sollenbarger v. Mountain States Telephone and Telegraph Co.,* 706 F.Supp. 776, 786 (D.N. M.1989) (burden is on party who knows about disqualifying interest to disclose it in timely manner rather than to chose to go ahead with proceedings until it finds atmosphere not to its liking).

Courts that have insisted upon holding special masters and referees to the high standards applicable to judges in matters affecting disqualification have acknowledged that parties objecting on the basis of an appearance of partiality must take action to eliminate the perceived conflict-of-interest in a timely fashion or risk being barred from the attempt. *See, e.g., Jenkins v. Sterlacci,* 849 F.2d 627, 633 (D.C. Cir.1988). *See also National Auto Brokers v. General Motors Corp.,* 572 F.2d 953, 958–59 (2d Cir.1978) (affirming denial of motion to disqualify judge in large part because the motion was not made at threshold of litigation, but in untimely fashion after five weeks of trial and months after facts had become known to counsel and because the alleged conflict had been public knowledge for years), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).

In *Jenkins v. Sterlacci* the Court of Appeals for the District of Columbia ruled that a special master could not be disqualified on the basis of the appearance of impropriety where a District of Columbia statute charged the moving parties with constructive notice for some considerable time of the master's dual roles. 849 F.2d at 633. The court deemed this statutory imputation of knowledge of the special master's conflict of interest to effect a waiver of any later appearance-of-partiality objection, even in the face of evidence that the master's failure to disclose the potential conflict had deprived the parties of actual knowledge of the pertinent facts. *Id.* at 634. *See also Jenkins v. Sterlacci,* 856 F.2d 274, 275 (D.C.Cir.1988) (denying rehearing). The *Jenkins* court went on to evaluate independently whether the object-

ing parties could still demonstrate actual bias or prejudice and concluded they could not. Accordingly it affirmed the district court's denial of the motion to disqualify the special master.

Although *Jenkins* differs from the case at bar in that the conflict-of-interest was found by the D.C. court to have been created by the moving parties after the special master had been appointed, that court's waiver rationale is applicable here. The onus is on the party objecting to the special master's appointment to take action in a timely manner once it is made aware of the conflict of interest. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988) (in extraordinary situations even a final judgment may be vacated because of a section 455 violation where facts warranting disqualification only become known to judge after judgment has been rendered, provided motion to vacate judgment pursuant to Fed.R.Civ.P. 60(b)(6) *"is made within a reasonable time" of discovery of such facts*) (emphasis added). A party may not lurk in the bushes to see how things are going before leaping out to shout "foul" when it senses it may not have its way.

### B. Facts and Conclusion

The facts in the case at bar provide even stronger support for a finding that Owens–Illinois has effectively waived objection to any appearance of partiality than did the circumstances in *Jenkins*. There can be no doubt that Owens–Illinois possessed not merely constructive, but actual knowledge of the special master's alleged conflict of interest.

The existence of the alleged conflict of interest was known to Owens–Illinois, as well as to the other defendants who had been members of the Asbestos Compensation Coalition or Committee for Equitable Compensation, from the outset of Mr. Feinberg's appointment. Prior to his appointment by Judge Levin Mr. Feinberg had disclosed to the Baltimore court and the parties the details of his earlier representation of both the Coalition and the Committee. *See Code of Judicial Conduct, su-*

*pra,* Canon 3.D (one disqualified by reason of appearance only may, instead of withdrawing, disclose on the record the basis of disqualification which parties and lawyers may waive); 28 U.S.C. § 455(e) (same). Owens–Illinois first raised reservations in September 1989 regarding Mr. Feinberg's ability to serve as an impartial special master in settling thousands of asbestos claims the company was defending in the Maryland litigation. Nevertheless, Owens–Illinois waited nearly five and one-half months, until January 1990, before moving to disqualify Mr. Feinberg.

Owens–Illinois' conduct in the instant litigation is reminiscent of its conduct in Maryland. When the courts and the special master-referee met with liaison counsel for the parties in the instant litigation on February 13, 1990 they set a rigid schedule as follows: (1) one month, from March 1—April 1, 1990 for collecting data on the Brooklyn Navy Shipyard cases; (2) one month, from April 1—May 1 to agree on a settlement methodology; (3) one month, from May 1 to June 1 to actually settle all or appreciably all of the cases and, failing that; (4) appropriate action by the courts for prompt disposition. Owens–Illinois has waited until Mr. Feinberg's term as special master-referee in the Brooklyn Navy Yard cases is close to complete before taking any action. This delay, coupled with the lack of specificity concerning the purported prejudice, suggests that the partiality claimed is more a figment of imagination and an attempt to delay settlement than a matter of real concern.

### VI. ACTUAL PREJUDICE

There remains only the argument that Mr. Feinberg's participation will or has actually prejudiced Owens–Illinois. But, as noted *supra* in Part III, no evidence has been presented of that eventuality that could be credited by a reasonable observer with knowledge of these proceedings. Owens–Illinois acknowledged at oral argument the complete absence of any actual prejudice.

Mediation and settlement negotiations are now moving toward the critical stage.

Delays should not be encouraged. The mediator has already expended an enormous amount of effort meeting individually with the parties and in meetings with various groups in assembling information, in conducting research, in consulting with the courts involved, and in making numerous suggestions. *See Rios v. Enterprise Ass'n of Steamfitters Local 638*, 860 F.2d 1168, 1175 (2d Cir.1988) (upholding district court's refusal to disqualify special master in part because he had been serving in that capacity for a number of years before any suggestion of recusal was made and had already acquired a considerable body of experience in the proceedings in question); *National Auto Brokers v. General Motors Corp.*, 572 F.2d 953, 958–59 (2d Cir.1978) (affirming denial of motion to disqualify where judge had, in course of presiding over case, acquired valuable background of experience), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).

With less than two weeks before a final report is due, to replace the mediator at this stage would be to largely negate the enormous amount of effort by all those involved to date. Moreover, it would impinge on the court's calendar in connection with hundreds of cases. If settlement is not consummated, the courts will move towards trial early in September and a huge expenditure of effort in connection with discovery, preparation and research by the courts will be required. In addition, scores of other cases will have to be moved from the trial docket. This will affect the work of many other lawyers and judges.

In this case it cannot be doubted that whatever knowledge of the moving party's internal procedure was acquired by Mr. Feinberg some years ago is by now stale and outmoded. It has been replaced by more current knowledge required in the course of mediation efforts in the Maryland and New York cases.

## VII. CONCLUSION

The motion has no merit. The court does not, however, find that it was made in bad faith. It is the obligation of the parties to bring to the court's attention anything that may lead to the questioning of its reputation for impartiality and fairness. Owens–Illinois did not act improperly in making the motion. In the Maryland litigation the court noted that the moving party agreed that if its motion were denied, it would proceed with the alternative dispute resolution mediation efforts without holding back in any way. It is assumed that this is the position of the moving party in the New York Litigation.

The motion was denied from the bench in view of the necessity of speed in the mediation efforts. This opinion is being issued now to explain the reasons for that oral decision from the bench.

So ordered.

## APPENDIX A

Circuit Court

for

Baltimore City

February 14, 1990

Gardner M. Duvall, Esq.

Whiteford, Taylor & Preston

Suite 1400

7 St. Paul Street

Baltimore, Maryland 21202

*re:* Owens–Illinois, Inc.'s

Motion to Disqualify

Master Feinberg for

alleged conflict of

interest

Circuit Court for Baltimore

City—AMOF 87048500

Dear Mr. Duvall:

I have carefully considered the above Motion filed by you as well as the Statement of the Special Master in response thereto.

There is a serious problem of waiver on the part of Owens–Illinois, Inc. (hereafter OI). It did not object before the deadline established by the Court for objection (August 31, 1989), rather it objected via a face-to-face conference with me on Septem-

ber 12, 1989 (Messers. Harry Johnson and Ford Davis, appearing on behalf of OI). I did not hold it against OI that it was late.

Later, Mr. Davis wrote me a letter dated September 14, 1989 voicing a conflict of interest objection. As you know, I overruled the objection by my letter dated September 19, 1989 and gave my reasons. OI took no exceptions nor did it appeal. At all times, before, during and after, OI cooperated in fact and in good faith with the Special Master, as it had promised it would do. *See* my September 19, 1989 letter at 3 ["... You have also said that Owens–Illinois will work specifically with Mr. Feinberg in such event (that I overruled its objection) and this Court believes that Owens–Illinois will do so ..."].

On December 13, 1989, there was a one-hour hearing attended by all asbestos counsel, including counsel for OI. The Special Master orally presented all counsel with an update of his performance, including the issue of whether Mr. Feinberg should be continued as Special Master. No one voiced any objection and indeed I thought that OI no longer had any objection. I am advised further that there have been conferences since then between you (and Harry Johnson) and the Special Master and that these conferences have been earnest and cooperative. This Court believes that OI has waived its conflict of interest objection.

Even if there were no waiver, this Court feels that the relief sought by OI, even assuming *arguendo* that its position were correct, vastly exceeds the relief needed to protect what OI perceives to be an unfairness to it (*see* your Motion at 9, "... use that information to the disadvantage of Owens–Illinois ..."). Since the alternative dispute process is entirely consensual, it is obvious that OI can simply exclude itself from participating in ADR at any time for any reason whatsoever. I sincerely hope that it does not see fit to do so.

To ignore this simple expedient and thus derail an ADR process that has been in operation for more than five months seems to be pure overkill. Moreover, the fact that OI is the only member of CEC to object serves to fortify this Court's conclusion that disqualification would not be appropriate even if your position were correct.

The more detailed Motion (and memorandum) filed by you since your firm's September 14, 1989 letter does not introduce any further facts into the picture and this Court is unpersuaded by the legal authorities presented therein. Therefore it is, on this 14th day of February, 1990, by the Circuit Court for Baltimore City, ORDERED that OI's Motion to Disqualify Special Master Kenneth R. Feinberg, Esq., be and the same is hereby DENIED.

Very truly yours,
(s) Marshall A. Levin
Marshal A. Levin

APPENDIX B

In the
COURT OF SPECIAL APPEALS

PHC No. 93

September Term, 1990

Owens–Illinois, Inc., Appellant

vs.

Kenneth R. Feinberg, Appellee

ORDER

This Court having read and considered the Motion to Dismiss failed by counsel for appellees Armstrong World Industries, Keene Corporation, GAF Corporation, H.K. Porter Company, Inc. and Owens–Corning Fiberglass, and the Opposition to Motion to Dismiss filed by appellant, Owens–Illinois, Inc., it is this 19th day of April, 1990, by the Court of Special Appeals,

ORDERED that the motion is granted and the appeal is dismissed as not allowed by law. Courts Article, Section 12–301, Maryland Rule 8–602(a)(1).

(s) Richard P. Gilbert
Chief Judge
(s) Theodore G. Bloom
Judge

(s)  <u>Robert L. Karwacki</u>
Judge